Mr. and Mrs. John CATES, Plaintiffs-Appellees,

v.

The ELECTRIC POWER BOARD OF the METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 12, 1983.

Permission to Appeal Denied by Supreme Court Aug. 1, 1983.

Matthew J. Sweeney, III, Dearborn & Ewing, Nashville, for plaintiffs-appellees.

Harry Mittwede, Eugene W. Ward, Nashville, for defendant-appellant.

## OPINION

TODD, Presiding Judge, Middle Section.

The defendant, Electric Power Board, has appealed from a non jury judgment for $43,000 damages to plaintiff's house resulting from wrongful termination of electric service and resultant freezing fracture of plumbing and leakage of water.

Certain background facts are undisputed.

Prior to and during the times material to this case, plaintiffs had a satisfactory contractual relationship with the Board for electrical service at their residence at 7860 Highway 100, Nashville, Tennessee. On December 5, 1980, plaintiffs purchased a new home at 6310 East Valley Drive, Nashville, Tennessee. Plaintiffs did not occupy the new house immediately, but continued to reside in the first mentioned house on Highway 100 during all times material to this dispute.

On December 5, 1980, Mr. Cates telephoned the Board and requested electrical

service for the new home. The Board agreed to furnish such service and to charge such service to plaintiff's existing account at the Highway 100 address. On or about December 8, 1980, the Board began to furnish electric service at the East Valley house; and, on January 6, 1981, service was terminated. The bill for service was sent to plaintiffs at their Highway 100 address and was paid.

The policy of defendant is that an existing residential customer in good standing may order new service for an additional residence by telephone, that a contract form for the new service is to be sent to the customer, signed and returned within 15 days, and that new service is subject to termination if the contract form is not signed and returned in 15 days.

As to one controverted fact, the evidence is as follows:

An employee of defendant testified that she remembered taking the telephoned order on December 5; that, ordinarily, she would advise the customer that the contract form must be signed and returned in 15 days; that she told the customer a form would be mailed to him; that, ordinarily, a letter would be prepared to send the contract form to the customer; that she saw a copy of such a letter, but said copy no longer exists.

Mr. Cates testified that he did not recall being told on the telephone about the contract form; and that no such form was ever received by plaintiffs.

On December 29, 1980, no contract form had been received by defendant, and an order was issued to terminate service at the new residence. No notice was given to plaintiffs prior to the issuance of said order. At the time of said order, there was no delinquency in payment of any charges due from plaintiff.

On December 30, 1980, an employee of defendant went to the new home to terminate service, but was unable to do so. He left a card in the back door of the house which read as follows:

Apparently you have overlooked making application for electric service at this address.

We urge you to *immediately* come to our office and make application in order to avoid the inconvenience of having the service disconnected.

For further information call 259–3555.
Nashville Electric Service
Church Street at 13th Avenue
Office Hours 8:00 A.M. to 5:00 P.M.

This card was never seen by plaintiffs.

On December 30, 1980, a bill was mailed to plaintiff for service at the new house. Said bill contained no notation of termination of service or delinquency in returning a contract form.

On January 3 or 4, 1981, plaintiffs visited the new house and found the electric heaters to be operating. They did not see the above quoted notice on the back door.

On January 6, 1981, an employee of defendant terminated service at the new home.

On January 17, 1981, plaintiffs again visited the new house and found extensive damage in the house due to the freezing and bursting of plumbing and the leakage of water.

During the period from January 6, 1981, to January 17, 1981, the temperature was as low as 5 degrees on January 12, 14 degrees on January 8 and 11, 16 degrees on January 10 and 17 degrees on January 7.

The Trial Judge, sitting without a jury, found for the plaintiffs in the amount of $43,000.

■ On the subject of liability, defendant-appellant presents ten issues of which the tenth is conclusive. Said issue is:

Whether the preponderance of the evidence presented at trial shows that plaintiff John Cates was advised to sign and return the T.N.A.D. form within 15 days.

The only argument of appellant upon this issue is as follows:

The credibility of John Cates' testimony about being notified of the requirement of mailing in the T.N.A.D. form, is

impeached by the testimony of Mrs. Andrews, and also by the generation of the turn-off by the tickler file, which was set upon as a result of Mrs. Andrews' print-out from her computer terminal. *Tenn. Valley Kaolin Corp. v. Perry,* Tenn.App. (1974) 526 S.W.2d 488; *West v. Metro Government of Nashville and Davidson County, Tennessee,* Court of Appeals, November 10, 1980, 5 T.A.M. 50–9. (Attached as Appendix "A")

The Defendant offered clear, concrete, and convincing non-oral, evidence to contradict the Plaintiffs' testimony. According to the evidence, if Mr. Cates had not been notified of the T.N.A.D. form by Mrs. Andrews and if the T.N.A.D. form had not been mailed to him, there would not have been any way to effect the turn-off from the computer printout. Messrs. Robert Marklein, Jim Rollins, Frank Stancliff and Mrs. Andrews testified to this fact. Their testimony is uncontradicted by the Plaintiffs. Likewise, the testimony of Special Meter Reader Breedlove that he visited the house at 6310 East Valley Drive and left notices on the back door, on December 30, 1980 and January 15, 1981, is uncontradicted.

In *Tenn. Valley Kaolin Corp. v. Perry,* cited above, this court said:

A Chancellor, on an issue which hinges on witness credibility, will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary. (citing authorities) We find no such other evidence of that category and the Assignment of Error is overruled.

In *West v. Metro Government,* cited above, this Court found that there was no clear, concrete and convincing evidence contrary to the oral testimony supporting the judgment.

Thus, neither of the authorities cited by appellant furnishes any guidance as to what clear concrete and convincing evidence is sufficient to warrant disregard of oral testimony accepted by the Trial Judge as true.

Appellant relies upon the fact that Mr. Cates did not testify that he was not told of the requirement that he sign and return a contract card. He did testify that he did not recall being told such. The difference, if any, between the former and the latter expressions is inconsequential and its effect, if any, would affect only the weight of the testimony which the Trial Judge has accepted as controlling. That is, the Trial Judge accepted the testimony "don't recall" as being equivalent to "it did not occur", and this Court is not in position to or disposed to reverse the judgment of the Trial Judge on this score.

Appellant challenges the testimony of Mr. Cates that the contract card was never received. He admitted that the mail "might have been discarded by a child". Such admission is not conclusive; indeed, it is evidence of candor of the witness, and should not be used to impeach his testimony. The mail "might have been" misdelivered, or removed by a stranger from the mail box; but it also "might have been" misplaced before being mailed by appellant. The Trial Judge weighed all of the "possibilities" against the probability arising from Mr. Cates' testimony, and decided in favor of the probability. This Court agrees.

Appellant also relies upon the evidentiary of a computer printout to show that a letter was actually dispatched. Granting the circumstantial indications from computer activity, this Court cannot say that the Trial Judge was in error in giving greater weight to the testimony of Mr. Cates than to inference deducible from the operation of a computer.

The foregoing is conclusive of the issue of negligence of appellant and contributory negligence of appellees.

However, brief reference will be made to the numerous other issues urged by appellant on the subject of liability.

Appellant's first issue is as follows:

Whether the preponderance of the evidence presented at trial is contrary to the findings of the judge that the defendant breached its contract for additional ser-

vice with plaintiffs by terminating electrical service on January 6, 1981.

■ Absent a finding of notice of and assent to the requirement for a signed contract card, the oral contract made on the telephone was to furnish service for an indefinite period. An implied term of such a contract is that service will not be suddenly terminated without reasonable notice. *First Flight Associates v. Professional Golf Co., Inc.* (CA Tenn. 6th Cir.1975), 527 F.2d 931; *Chattanooga R & CR Co. v. Cincinnati N.O. & P. Ry Co.* (CC Tenn.1890), 44 F. 456.

The first issue is without merit.

The second, third, and fourth issues are as follows:

2. Whether the preponderance of the evidence presented at the trial is contrary to the findings of the trial judge that the defendant owed a duty to the plaintiffs to not terminate electric service at the new home (additional service) without providing notice and afford the plaintiffs an opportunity to be heard to contest the intended termination.

3. Whether the defendant electric utility violated the plaintiffs' constitutional right of due process in not giving further notice and opportunity to be heard before terminating electric service at the additional account.

4. Whether the notice and hearing requirement set forth in the case of *Memphis Light, Gas & Water Division v. Craft,* (436 U.S. 1, 56 L.Ed.[2d] 30, 98 S.Ct. 1554 (1978), pertaining to disputed accounts apply where the plaintiffs failed to comply with rules and regulations of electric utility by signing and returning a T.N.A.D. form for additional account, when account is not in dispute.

■ The second and third issues are deemed immaterial in the light of the foregoing rulings upon the 10th and 1st issues. Regardless of whether the plaintiffs had a right to contest the discontinuance of service, they certainly had a right to know that service was being discontinued to enable them to protect themselves from the very damage that did occur. If plaintiffs had known of the discontinuance of electric service they could and undoubtedly would have drained the pipes, or at least closed the water valve so that water would not flow profusely in event of a freeze and rupture of plumbing.

The second, third, and fourth issues are without merit.

The fifth issue is as follows:

5. Whether the directive by defendant's employees to the plaintiffs to sign and return T.N.A.D. form within 15 days, or service at additional account is subject to termination satisfied the due process requirement of notice.

This issue is immaterial and without merit in view of the finding of the Trial Judge, approved by this Court, that no notice was given to plaintiffs of any 15 day rule.

Issues Nos. 6 and 7 are as follows:

6. Whether the plaintiffs' failure to sign and return a T.N.A.D. form within 15 days as required by defendant's rules and regulations in order to have continuous and uninterrupted electric service at the additional account (address), constituted contributory negligence.

7. Whether the plaintiffs' failure to comply with the rules and regulations for additional accounts (service) was the direct and proximate cause of the termination of service, and the plaintiffs' resulting damages.

As previously stated, the finding of the Trial Court and this Court that plaintiffs received no notice of the requirement for signed contracts, is conclusive as to any negligence of plaintiffs in failing to comply with such requirement. Plaintiffs could not possibly be penalized for failure to comply with a rule or regulation of which they had no notice or knowledge.

The sixth and seventh issues are without merit.

The eighth and ninth issues are as follows:

8. Whether the defendant electric utility had the right to terminate electric service to the plaintiffs' additional account, when the plaintiffs failed to

comply with the defendant's rules and regulations by not having signed, notarized and mailed a T.N.A.D. card to defendant within 15 days.

9. Whether the plaintiffs were required to comply with the defendant's rules and regulations before being entitled to continuous and uninterrupted service for additional account (service).

These issues are likewise without merit for the reason that plaintiff had no notice of any rule and made no agreement in regard to termination for failure to sign a contract within 15 days.

The eleventh and twelfth issues are as follows:

11. Whether the plaintiffs sustained damages in the amount awarded by the Trial Judge.

12. Whether the preponderance of evidence presented at the trial is contrary to the finding of the judge that on some date between January 6 and January 17, 1981 pipes connected to the two water heaters located at opposite ends of the attic in plaintiffs' new home froze and burst and did extensive damage to the new home.

Appellant's entire argument in support of these two issues is as follows:

There was no evidence whatsoever, either direct or circumstantial, that the bursting of the pipes was caused by any act or negligence of the Defendant. There was no evidence whatsoever that the pipes burst between January 6 and 17, 1981. The Plaintiffs' own witness, Millard Bridges, an engineer with a B.S. degree in general engineering from Tennessee Tech in 1968, testified in response to the question on cross-examination. (On page 174 of the Transcript, 2nd day of the hearing) as follows:

"Q. So you don't know whether they ruptured before the electricity was terminated or after the electricity was terminated?

A. I do not."

(Tr. 174—Second day)

Witness Bridges testified that the damages were $42,000. (Tr. 172). Mr. Cates testified that he filed a claim with his insurance company which referred to the date of the loss as: "Loss occurred on 1–12 of 81", which he signed on 9–3–81, and the insurance company paid him $22,-000 for his damages (Tr. 154 and 156). That even though this was approximately one-half of his damages, he was advised to litigate with NES rather than his insurance carrier (Tr. 156–157).

There is no merit to these two issues or the argument in support of them.

Appellant's issues nos. thirteen and fourteen are as follows:

13. Whether sovereign immunity under the Governmental Tort Liability Act, T.C.A. § 29–20–101, et seq., is waived by the defendant's liability insurance with a retention of the first $100,000 coverage.

14. Whether the limits of liability established by the Governmental Tort Liability Act limits plaintiffs' recovery, where the defendant is not self-insured, but has liability insurance with a retention or deductibility of the first $100,000.

TCA 29–20–403 reads as follows:

"TCA 29–20–402. *Liability insurance authorized—Limits Limits of liability for self-insuring entities.*—(a) Any governmental entity may purchase insurance to cover its liability under this chapter.

(b) Every policy or contract of insurance purchased by a governmental entity as authorized by this chapter shall provide:

(1) Minimum limits of not less than twenty thousand dollars ($20,000) for bodily injury or death of any one (1) person in any one (1) accident and not less than forty thousand dollars ($40,000) for bodily injury or death of any two (2) or more persons in any one (1) accident provided, however, that in cases arising out of the ownership, maintenance, and use of automobiles, the minimum limit shall be not less than fifty thousand dollars ($50,000) for property damage or because of bodily injury or death of one (1) person in any one (1) accident, and to limit of not less than three hundred thou-

sand dollars ($300,000) because of bodily injury or death of two (2) or more persons in any one (1) accident. Provided further, that in the event said governmental entity is unable to purchase insurance to cover its obligations hereunder, except through an assigned risk pool, then for purposes of § 29–20–311 the limits of liability shall be ten thousand dollars ($10,000) for injury to any one (1) person resulting from one (1) accident and twenty thousand dollars ($20,000) for all injuries resulting from one (1) accident with a limit of five thousand dollars ($5,000) for property damages resulting from any one (1) accident. If insurance is not purchased through an assigned risk pool then the greater limits above apply.

(2) Minimum limits of not less than ten thousand dollars ($10,000), except as provided above, for injury to or destruction of property of others in any one (1) accident.

(c) Any governmental entity electing to self-insure its liability shall have the same limits of liability as if insurance had been purchased. (Acts 1973, ch. 345, § 24; TCA § 23–3327.)

Appellant carries a $10,000,000 liability insurance policy which contains an exclusion for the first $100,000 of liability. Appellant first argues that it is uninsured as to the amount of the recovery in this case and, therefore, may claim governmental immunity.

■ This Court totally disagrees with the reasoning of appellants. By excluding the first $100,000 of liability, appellant did not preserve its rights to governmental immunity, but constituted itself a self-insured entity under § 29–20–403(c) above, to the extent of the $100,000 exclusion.

Appellant next relies upon T.C.A. § 29–20–405, as follows:

"*Construction of liability insurance policy not in compliance with law.*—Any insurance policy, rider or indorsement purchased to insure against any risk which may arise as a result of the application of this chapter and which contains any condition or provisions not in compliance

with the terms of this chapter, shall not be rendered invalid, but shall be construed and applied in accordance with the intention of this chapter. (Acts 1973, ch. 345, § 26; TCA § 23–3329)."

■ This section has no relation to the uninsured liability of appellant but to the possible *invalidity of the insurance policy* and the effect of such invalidity might have upon the immunity of appellant. There is no insistence in this case that the insurance policy was invalid.

Appellant next relies upon T.C.A. § 29–20–311 as follows:

"29–20–311. *Judgment over limits of insurance policy prohibited.*—No judgment or award rendered against a governmental entity may exceed the minimum amounts of insurance coverage for death, bodily injury and property damage liability specified in § 29–20–403, unless such governmental entity has secured insurance coverage in excess of said minimum requirements in which even the judgment or award may not exceed the applicable limits provided in the insurance policy. (Acts 1973, ch. 345, § 28; 1976 (Adj. S.), ch. 656, § 1; TCA § 23–3323)."

This reliance is misplaced. The statute refers to the upper limits and not the lower limits of the policy.

Appellants issues nos. thirteen and fourteen are without merit.

Appellants issue no. fifteen is as follows:

Whether the evidence at trial preponderates against the judge's finding that the plaintiffs' injury was a direct and proximate cause of the defendant's negligence.

Appellant relies upon T.C.A. § 29–20–310 as follows:

"29–20–310. *Determination to be made by Court—Reductions on claims against employees.*—(a) The Court, before holding a governmental entity liable for damages, must first determine that the employee's or employees' act or acts were negligent and the proximate cause of plaintiff's injury, that the employee or

employees acted within the scope of his or their employment and that none of the exceptions listed in § 29–20–205 are applicable to the facts before the Court."

Appellant argues:

"The proof in this case will show that none of the employees of the Defendant acted in a negligent manner."

 Contrary to defendant's argument, the evidence shows, the Trial Judge found, and this Court agrees that the employees of defendant acted within the scope of their employment in a negligent manner, to wit:

1. The employee who accepted the telephone order for service failed to inform the caller of the rule of defendant regarding a written contract within 15 days.

2. The employees of defendant negligently failed to send the proper contract form to the plaintiffs with suitable information.

3. The employee who ordered the termination was negligent in doing so without making sure that the customer was aware of the 15 day rule.

4. The employee of defendant who sent the bill to plaintiffs at their residence was negligent in failing to notify plaintiffs of the ordered termination.

5. The employer of the defendant who placed the notice on the rear door of the new house was negligent in not observing that the house was unoccupied and that the notice should be sent to the address of plaintiff which was known to defendant.

6. The employee of defendant who stopped the service was negligent in failing to notify plaintiffs at their known address that the service was being terminated.

Some of the negligence of defendant was joint, in that the joint actions and omissions of two or more employees produced the damages. This Court does not understand that § 29–20–310 applies where the totality of actions and omissions produced damage, even though the action or omission of no single employee, standing alone, would have produced the injury.

Moreover this Court finds as a fact that none of the exceptions listed in TCA § 29–20–205 are applicable to the facts of this case.

Appellants issue no. 15 is without merit.

Although not mentioned in any issue, appellant finally argues that punitive damages are not recoverable under the "Government Tort Act".

There is no evidence that any part of the judgment under review is punitive damages.

No merit is found in any of the insistences of appellant.

The judgment of the Trial Judge is affirmed. All costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for collection of the judgment and costs and such other further proceedings as may be necessary and proper.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.