**MISCO, INC., Mid-South Aluminum Company, and Everett W. Fielder, Jr., Plaintiffs-Appellants,**

v.

**UNITED STATES STEEL CORPORATION and Alside, Incorporated, Defendants-Appellees.**

**No. 84–5890.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 30, 1985.

Decided Feb. 19, 1986.

Robert Johnson, Wildman, Harrold, Allen, Dixon, Memphis, Tenn., William L. White, Jr., Gen. Atty., U.S. Steel Corp., Pittsburg, Pa., Leon R. Goodrich (argued), Oppenheimer, Wolff, Foster, Shepard & Donnelly, W. Joseph Bruckner, St. Paul, Minn., James R. Bussman, Akron, Ohio, for defendants-appellees.

Larry E. Parrish (argued), Parrish & Mulrooney, Memphis, Tenn., Fred M. McDonald, for plaintiffs-appellants.

Before MARTIN and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Plaintiffs-appellants Misco, Inc., Mid-South Aluminum Company, and Everett W. Fielder (collectively referred to as "Misco") appeal from the district court's rulings in favor of defendants-appellees United States Steel Corporation ("USS") and USS' wholly-owned subsidiary Alside, Inc. on their federal antitrust and Tennessee common law and statutory breach of contract claims. On appeal, Misco alleges that the district court committed numerous errors in reaching its decisions. After carefully considering each contention, we affirm in part, reverse in part, and remand for further proceedings.

The district court assumed, without ever explicitly deciding, that the following facts taken from Misco's complaint were true. Fielder was the sole shareholder in Mid-South Aluminum Company (Mid-South), located in Nashville, Tennessee. In 1966, Mid-South and Alside, Inc. ("Alside") entered into an exclusive dealership agreement. Under the agreement, Mid-South in exchange for agreeing to retail Alside products was given the exclusive rights to retail Alside products in middle Tennessee.[1] In

---

1. Alside conceded the existence of this exclusive dealership arrangement in its answer to request for admission 30.

June, 1969, Alside became a wholly-owned subsidiary of USS and shortly thereafter Alside approached Fielder and requested a change in the existing contract. Alside represented to Fielder that due to a change in marketing strategy Alside needed a wholesale distributor of its products in the middle Tennessee area. The representatives promised Fielder that if he undertook this obligation Alside would make him its exclusive wholesaler in the middle Tennessee area. Fielder agreed and established Misco, Inc. to perform the new contract. On July 24, 1974, executives from Alside had a meeting with Fielder and informed him that Alside was opening a warehouse in the Nashville area. Alside opened a warehouse in Nashville in September, 1974 and Misco commenced this action in April, 1978.

Misco in its complaint alleged that Alside and USS violated Section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), and Sections 2(a), 2(d), and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(a), 13(d), 13(e) (1982). Misco further contended that Alside breached its exclusive dealership contract with Misco and that USS wrongfully induced the breach in contravention of Section 47–50–109 of the Tennessee Code, Tenn.Code Ann. § 47–50–109 (1984). The district court dismissed Misco's claims under Section 1 of the Sherman Act, Sections 2(d) and 2(e) of the Robinson-Patman Act, and Section 47–50–109 of the Tennessee Code for failing to state claims upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6). After some discovery, the district court granted Alside's and USS' motion for summary judgment on Misco's claim under Section 2(a) of the Robinson-Patman Act. Finally, following a trial on the record, the district court determined that Alside had not breached its contract with Misco. On appeal, Misco attacks all of the district court's holdings and argues that the district court improperly refused to consider its untimely demand for a jury trial and erroneously categorized its "requests for admissions" as interrogatories. We will consider the antitrust claims first, the state law actions second, and the procedural issues last.

A complaint may only be dismissed under Rule 12(b)(6) if the allegations in the complaint appear beyond doubt not to support a claim for which relief may be granted. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The district court, in this case, ruled that Misco's claims under Section 1 of the Sherman Act and Sections 2(d) and 2(e) of the Robinson-Patman Act failed to state actionable claims. We consider each claim in turn.

■ Misco alleges that Alside and USS violated Section 1 of the Sherman Act by conspiring to eliminate competition in the marketing of siding. In order to state a claim under Section 1, the plaintiff must allege the existence of concerted activity. *See United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Misco concedes, as it must, that Alside being a wholly-owned subsidiary of USS is and has been since June 1969 incapable of conspiring with USS. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 2745, 81 L.Ed.2d 628 (1984); *see Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 221 (6th Cir.1985) (per curiam). Misco, however, asserts that the conspiracy between Alside and USS began before USS acquired Alside and that USS' acquisition of Alside in 1969 was part of the conspiracy. Even accepting these assertions, Misco's complaint was still filed over nine years after the last overt act, USS' acquisition of Alside. Thus, since the "statute of limitations commences to run from the commission of the last overt act causing injury or damage," *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 233 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974), Misco's action is barred by the four year statute of limitations applicable to antitrust actions. 15 U.S.C. § 15b (1982). Accordingly, the district court correctly dismissed Misco's Section 1 conspiracy claim.

■ Misco also alleged in its complaint that Alside and USS violated Sections 2(d) and 2(e) of the Robinson-Patman Act. The

gravamen of an action under either Section 2(d) or Section 2(e) is that the defendant is supplying services to one customer but not to another. *See FTC v. Fred Meyer, Inc.,* 390 U.S. 341, 343, 350–51, 88 S.Ct. 904, 905, 909, 19 L.Ed.2d 1222 (1968); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1327–28 (6th Cir.1983). In this case, Misco's complaint never once alleged that Alside or USS discriminated in the supplying of services to their customers. Dismissal under Rule 12(b)(6) was, therefore, appropriate.

■ Similarly, Misco contends that Alside and USS violated Section 2(a) of the Robinson-Patman Act by discriminating in the prices which they charged their customers. The district court granted summary judgment in Alside's and USS' favor on this claim. Summary judgment may only be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no issue of material fact. Fed.R. Civ.P. 56(c); *SEC v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985) (per curiam). Further, in antitrust litigation summary procedures should be used sparingly. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Smith v. Northern Michigan Hospitals, Inc.,* 703 F.2d 942, 947–48 (6th Cir. 1983).

Section 2(a) of the Robinson-Patman Act only applies to sales which are "in commerce." 15 U.S.C. § 13(a) (1982). The in commerce jurisdictional prerequisite is met only if one of the alleged discriminatory sales crossed a state line. *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 198–201, 95 S.Ct. 392, 400-01, 42 L.Ed.2d 378 (1974); *S & M Materials Co. v. Southern Stone Co.,* 612 F.2d 198, 200 (5th Cir.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980); *Willard Dairy Corp. v. National Dairy Products Corp.,* 309 F.2d 943, 946 (6th Cir.1962), *cert. denied,* 373 U.S. 934, 83 S.Ct. 1534, 10 L.Ed.2d 691 (1963). Misco's complaint lacks any allegation and Misco has failed to adduce any evidence tending to show that any of the discriminatory sales crossed state lines. In these circumstances, the district court did not err in granting summary judgment. We next consider Misco's state law claims.

■ Misco asserts that the district court erred in ruling in favor of Alside and USS on its breach of contract claim. The district court relied upon two grounds in rejecting Misco's claim: first, that Misco initially breached the exclusive dealership contract and, second, that Misco received adequate notice of the termination. Although a district court's findings of fact must be upheld by a reviewing court unless clearly erroneous, Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City, North Carolina,* —— U.S. ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985), an appellate court may reverse a district court's factual findings if, based on the entire record, it is left with a definite and firm conviction that a mistake has been committed, *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The district court first determined that "no factual dispute" existed concerning the fact that Misco initially terminated the exclusive dealership agreement. This finding lacks any support in the record. The district court, in support of its holding, noted that Fielder admitted that he took action inconsistent with his position as Alside's exclusive dealer on June 24, 1974,[2] exactly one month before the July 24, 1974 meeting. As the district court acknowledged in its opinion, however, Fielder took this action only after having been informed by Dan Smith, an Alside Sales Representative, that Alside planned to open a warehouse in

---

2. In its opinion, the district court indicated that Misco returned Alside's siding on June 24. Actually, Fielder on June 24 contacted his major Alside customer, Dickey, to attempt to persuade him to switch from Alside to a competitor's siding and offered Alside's Sales Representative Dan Smith employment at Misco. Due to our disposition of this issue, we need not decide whether these two actions would constitute a material breach of contract, hence discharging Alside's duty to perform. *See W.F. Holt Co. v. A & E Electric Co.,* 665 S.W.2d 722, 730 (Tenn.Ct. App.1983); Restatement (Second) of Contracts §§ 237, 241 (1979).

Nashville. Dan Smith in his sworn statement averred that in a meeting in February 1974, he was told by O.J. French, Alside's Divisional Sales Manager, in the presence of two other Alside executives, Francis Fuglaar, French's supervisor, and Bill Sauer, Vice President of Sales, that Alside was going to open a warehouse in Nashville. Besides the foregoing evidence, the only other evidence on the termination question were the depositions of Sauer and Alside's Vice President Leshman. Leshman indicated that he was told by Sauer in March, 1974 that Alside was opening up a Nashville warehouse and maintained that he did not know if Misco had an exclusive dealership agreement with Alside.[3] Consistent with Leshman's testimony, Sauer stated that he was responsible for the decision to open the Nashville warehouse and that he made this decision in February, 1974. In accordance with his deposition, Sauer told Fielder at the July 24, 1974 meeting that the decision to terminate Misco had been made "a month or so ago."[4] Thus, viewing the evidence in a light most favorable to Alside, the only reasonable conclusions that can be drawn is that Alside had determined to end Misco's exclusive dealership before Misco took any action inconsistent with its position as Alside's exclusive dealer and that Misco took action only after Fielder was informed by an Alside representative that Alside planned to open a Nashville warehouse. In light of the foregoing, we conclude that the district court's finding that Misco terminated the exclusive dealership is clearly erroneous. We, therefore, must consider the district court's alternative ground for its decision.

▪ The district court reasoned that since Misco received notice of Alside's plan to open a Nashville warehouse on June 24, 1974, over two months before the warehouse opened in September, 1974, Misco had received all the prior notice to which it was entitled. Under Tennessee law, a contract lacking a durational term is terminable at will by either of the parties. *Apco Amusement Co. v. Wilkins Family Restaurants of America, Inc.*, 673 S.W.2d 523, 528 (Tenn.Ct.App.1984). Contracts terminable at will can only be terminated upon reasonable notice. *Cates v. Electric Power Board of the Metropolitan Government of Nashville and Davidson County*, 655 S.W.2d 166, 170 (Tenn.Ct.App.1983); *First Flight Associates, Inc. v. Professional Golf Co.*, 527 F.2d 931, 935 (6th Cir.1975). Reasonable notice of termination flows from and must be determined in accordance with the standards of good faith and fair dealing implied in every contract. *See Sylvan Crest Sand & Gravel Co. v. United States*, 150 F.2d 642, 644 (2d Cir.1945); Restatement (Second) of Contracts § 205 (1979); *see also* Tenn.Code Ann. §§ 47–1–203, 47–2–103(1)(b) (1964).

▪ The district court's holding on this issue was premised upon an earlier order in which, while considering Alside's and USS' motion to dismiss Misco's contract action for failing to state a claim for which relief could be granted, it noted that as a matter of law a period of thirty days, not to exceed sixty days, was reasonable notice. The determination concerning what constitutes reasonable notice, however, is a fact-specific inquiry dependent upon the length of the contractual relationship between the parties, the reliance which either party has placed upon the continuing vitality of the contractual relationship, the particular business involved, and the practices and customs in the industry. The district court, thus, erred in concluding as a matter of law that thirty days was reasonable notice without considering the specific circumstances surrounding this case. Since neither ground relied upon by the district

---

**3.** Leshman had no knowledge concerning Misco until after January 1, 1974.

**4.** A transcript of a tape recording made of the July 24, 1974 meeting was attached to "plaintiff's response in accordance with court's order on defendant's motion for summary judgment." In his deposition, Sauer acknowledged that he remembered "in substance" making such a statement.

court supports its determination on Misco's breach of contract claim, we reverse and remand this portion of the case for further proceedings.

Misco also contends that the district court erroneously determined that its action against USS for wrongfully inducing Alside to breach the exclusive dealership agreement with Misco under Section 47–50–109 of the Tennessee Code, Tenn.Code Ann. § 47–50–109 (1984), was barred by the statute of limitations. The district court initially noted that Section 47–50–109 creates a statutory treble damage remedy for wrongful inducements to breach a contract and contains no express limitations period. Thus, the district court reasoned that either Tennessee's one year statute of limitations for "actions for statutory penalties," Tenn. Code Ann. § 28–3–104(a) (1980), or Tennessee's three year limitations period pertaining to actions "for injuries to personal or real property," Tenn.Code Ann. § 28–3–105(1) (1980), would apply. In either case, the district court concluded that Misco's action was barred since Misco's complaint was filed almost four years after any alleged wrongfully induced breach. Misco maintains that this Court's decision in *City of Atlanta v. Chattanooga Foundry & Pipeworks*, 127 F. 23 (6th Cir.1903), *aff'd*, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906), mandates that Tennessee's ten year catch-all limitations period, Tenn.Code Ann. § 28–3–110(3) (1980), be applied to actions under Section 47–50–109. We disagree.

■■■ In *Chattanooga Foundry*, this Court applied Tennessee's ten year catch-all statute of limitations to an action brought under Section 1 of the Sherman Act.[5] The court in analyzing the applicable Tennessee statutes, which are almost identical to the current versions of Sections 28–3–104(a), 28–3–105(1), and 28–3–110(3) of the Tennessee Code, proceeded in two steps. First, the Court held that the treble damage provision of the Sherman Act was

not a statutory penalty within the meaning of the predecessor to Section 28–3–104(a). Next, the Court drew a distinction between injuries to business and injuries to property. *Chattanooga Foundry*, 127 F.2d at 30–31; *see United Mine Workers of America v. Meadow Creek Coal Co.*, 263 F.2d 52, 61–63 (6th Cir.), *cert. denied*, 359 U.S. 1013, 79 S.Ct. 1149, 3 L.Ed.2d 1038 (1959). Since the injuries in *Chattanooga Foundry* were solely business related, the court concluded that the action fell outside the purview of the predecessor to Section 28–3–105(1) which governed injuries to property. Thus, because no other specific statute of limitations was applicable, the Court held that the action fell within Tennessee's catch-all ten year limitation period. In contrast, this Court in *Edwards v. Travelers Insurance of Hartford, Connecticut*, 563 F.2d 105, 122–23 & n. 11 (6th Cir.1977), *cited with approval in Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 730 (Tenn.Ct.App.1980), held that a Tennessee common law action for wrongfully inducing a breach of contract concerned an injury to property within the purview of Section 28–3–105(1). *See also American Fidelity Fire Insurance Co. v. Tucker*, 671 S.W.2d 837, 841 (Tenn.Ct.App.1983) (fraud in the inducement of a contract sounds in tort and hence subject to Section 28–3–105's three year limitation period). Since Section 47–50–109 essentially codifies the common law action for wrongful inducement to breach a contract, *Emmco Insurance Co. v. Beacon Mutual Indemnity Co.*, 204 Tenn. 540, 551, 322 S.W.2d 226, 231 (1959), Section 47–50–109 must also pertain to losses of property within the ambit of Section 28–3–105(1). Our decision in *Chattanooga Foundry* is, therefore, simply inapplicable to cases of wrongful inducement to breach a contract. Having determined that an action pursuant to Section 47–50–109 does not fall within Tennessee's catch-all ten year limitations period, we need not decide whether the one year limitations period applicable to actions

---

5. *Chattanooga Foundry* was decided before the passage of the four year statute of limitations

period of 15 U.S.C. § 15b (1982).

for statutory penalties [6] or the three year limitations period applicable to actions for injuries to property would apply to claims under Section 47–50–109 for, as the district court determined, in either case Misco's action is barred.[7] Finally, we review Misco's procedural assignments of error.

■■■ Misco argues that the district court erred in refusing to grant its untimely motion for a jury trial. Although Rule 38(b), Fed.R.Civ.P. 38(b), requires that a demand for a jury trial be made within 10 days of the last pleading directed to the issue, a district court "in its discretion" under Rule 39(b), Fed.R.Civ.P. 39(b), may grant a late motion for a jury trial. A district court has broad discretion in ruling on a Rule 39(b) motion. *Swofford v. B & W, Inc.*, 336 F.2d 406, 408 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). As a general rule, a district court will not abuse its discretion in denying a Rule 39(b) motion if the only justification is mere inadvertence.[8] *See Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 844, 78 L.Ed.2d 311 (1983); *Aetna Casualty & Surety Co. v. Jeppesen & Co.*, 642 F.2d 339, 341 (9th Cir.1981); *Galella v. Onassis*, 487 F.2d 986, 996 (2d Cir.1973).

■■■ In this case, Alside and USS answered Misco's complaint on July 10, 1978. Misco did not file its demand for a jury trial until almost three months later on October 6, 1978. Misco has given no reason why it was well over two months late

in requesting a jury trial. Moreover, the district court, in denying the motion, reasoned that, due to the complexity of the case, a jury trial would be less efficacious than a bench trial. Under these circumstances, we do not believe that the district court abused its discretion in denying the Rule 39(b) motion.

Finally, Misco contends that the district court abused its discretion in determining that Misco's "requests for admissions" were actually interrogatories. On May 22, 1978, less than one month after filing its complaint and before either USS or Alside had filed an answer, Misco filed requests for 2,028 admissions, comprising 343 pages. Although Misco one month later voluntarily withdrew 580 of its "requests of admissions," this still left 1,440 requests, comprising 225 pages. Alside and USS objected to the requests for admissions and the matter was referred to a magistrate. The magistrate held that only 18 of the 1,440 styled "requests for admissions" were actually valid requests for admissions under Rule 36, Fed.R.Civ.P. 36. The other 1,432 requests were determined by the magistrate to be interrogatories under Rule 33, Fed.R.Civ.P. 33, which a local district court rule limited to thirty. The district court adopted the magistrate's recommendation and report.

■■■ Requests for admissions are not a general discovery device. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2253, at 706 & n. 23 (1970)

---

6. Specifically, we do not decide whether the treble damage provision of Section 47–50–109 constitutes a "statutory penalty" under Section 28–3–104(c) or whether Section 28–3–104(a) is a special statute of limitations which would take precedence over Section 28–3–105(1), *see Watts v. Putnam County*, 525 S.W.2d 488, 492 (Tenn. 1975) (special statutes of limitation take precedence over general statutes).

7. Misco's contention that the four year statute of limitations applicable to federal antitrust actions, 15 U.S.C. § 15b (1982), should be applied to its action under Section 47–50–109 is frivolous. Misco's complaint explicitly alleges that its cause of action arises under Section 47–50–109. State law governs state law claims. *Erie*

*R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

8. We note that different policy considerations may be applicable if the party who failed to file a timely jury demand has been hailed into federal court against his will, *see Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389 (2d Cir. 1983), or is proceeding *pro se, see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Washington v. New York City Board of Estimate*, 709 F.2d 792, 799 (2d Cir.) (Oakes, J., dissenting), *cert. denied*, 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). *See generally* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2334 (1971).

(citing cases). Further, a district court has broad discretion in regulating discovery. *Brown v. Arlen Management Corp.*, 663 F.2d 575, 580 (5th Cir.1981). Misco's filing of 2,028 "requests for admissions" was both an abuse of the discovery process and an improper attempt to circumvent the local district court rule which limited the number of interrogatories to thirty. Accordingly, the district court clearly acted properly in limiting Misco's discovery in this regard.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.