853 F.2d 926
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carol J. GATES, Plaintiff-Appellee,
v.
Eugene GUYTON, Leroy Merriweather, and James Burton,
Defendants-Appellants,
City of Cleveland, et al., Defendants.
 Nos. 87-3315, 87-3449.
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1988.
 
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges, and JULIA S. GIBBONS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Eugene Guyton, Leroy Merriweather and James Burton, Cleveland police officers, appeal from the lower court judgment for Carol J. Gates in her suit alleging false arrest and police brutality. The gist of plaintiff's complaint is that defendants violated her civil rights in the course of her arrest and incarceration at the Cleveland Fourth Police District on March 21, 1984. In addition to her state tort law claims, she asserted a federal claim under 42 U.S.C. Sec. 1983.
 
 
 2
 The incident that gave rise to the alleged exercise of excessive force by various Cleveland police officers at issue here occurred on March 21, 1984, when plaintiff parked her car illegally on a city street of Cleveland. Plaintiff had parked her vehicle with its "left wheels to curb," which at the time of its occurrence was an arrestable offense under Cleveland ordinances. Plaintiff was attempting to pick up her mother who lived in a house on that side of the street. As she awaited her mother, Cleveland police officers Merriweather and Burton pulled up alongside plaintiff. They directed her to "get out of the car or get a $70 ticket." Gates complied. When she approached the police car she was asked why she was parking on the wrong side of the street. She was also asked by Officer Merriweather whether her "momma" was worth $70--the cost of a parking ticket. Disgusted, Gates walked away. Gates was then told she was under arrest and was placed in the back of the police car. She was not handcuffed, patted down, or forced to submit to a search of her purse.
 
 
 3
 On the way to the station, Gates and police officers engaged in an abusive exchange of racial epithets and other derogatory language. Upon arriving at the station, Gates sought the attention of Sergeant Ray Maciejewski. He nodded to her and waved that he would be with her shortly.
 
 
 4
 Apparently, Officers Burton and Merriweather decided at this time it was now appropriate to search plaintiff's purse. When Officer Merriweather attempted to seize plaintiff's purse to search it in the booking area, she grabbed it back, refusing to let him take it. What happened next is not at all clear. According to plaintiff, whose version of what transpired was wholly adopted by the court below, she was slapped by Officer Merriweather and was knocked to the floor by a kick in the back from Officer Burton. For several minutes she was allegedly kicked and punched by at least four police officers. The scuffle allegedly ended with Officer Guyton having his knee in her chest, Officer Merriweather having a knee on one shoulder, Officer Burton having a knee on the other shoulder, and Officer Lavalle holding her feet. The district court in accepting Gates' version of this assault found that she was "almost completely credible, while none of the police officers who testified, with the possible exception of Lavalle, were credible in the least."
 
 
 5
 As a result of this incident, plaintiff instituted this action. Seven days before trial, counsel for the defendants discovered that no formal jury demand had been filed and immediately thereafter filed a motion for jury trial. Though the parties apparently had proceeded on the assumption that a jury had been requested, the court nevertheless overruled on September 26, 1986, defendants' motion for a jury trial. At the bench trial, the court found against the three defendants and awarded compensatory damages of approximately $85,000; $75,000 of which was for alleged emotional distress. Defendants now assert various errors on appeal.
 
 
 6
 Defendants' first assignment of error is that the court below committed error in overruling their motion for a jury trial. The standard when reviewing the denial of a Rule 39(b) motion for a jury trial is whether the lower court judge abused her discretion. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1013 (6th Cir.1987). In that case, citing approvingly our earlier decision in Misco, Inc. v. United States Steel Corp., 784 F.2d 198, 205 (6th Cir.1986), we stated that a district court "does not abuse its discretion by denying a 39(b) motion if the only justification for delay in requesting a jury trial is 'mere inadvertance.' " We also noted that the Second and Ninth Circuits have previously held that a 39(b) motion must be denied if the only reason for the delay was a mistake or inadvertance. See Lewis v. Time, Inc., 710 F.2d 549, 556-57 (9th Cir.1983); Galella v. Onassis, 487 F.2d 986, 996 (2nd Cir.1973). The argument that the trial judge, because she reviewed documents otherwise inadmissible, was constrained to grant the Rule 39(b) motion is totally devoid of merit. The failure to put in a timely request for a jury trial was simply mistake and inadvertance. Accordingly, we see no basis for finding that the district court judge committed an abuse of discretion in overruling defendants' late jury trial motion.
 
 
 7
 Defendants also argue on appeal that the district court made factual findings that were clearly erroneous when it found Gates' testimony credible and held that defendants had used excessive force against plaintiff. Defendants base their argument upon the inconsistencies in Gates' testimony, such as her testimony at trial that four officers participated in the beating despite her earlier statements that there were only two. Defendants also rely upon photographs taken after the alleged assault that reveal no signs whatsoever of trauma or injury to Gates. The objective evidence also included medical evidence provided by plaintiff's own examining physicians, who testified that there was no evidence of external injuries, swelling, bruising or any other injuries, other than three small scratch marks on the side of Gates' neck and some swelling of one finger. While we, too, are not totally comfortable with the apparently wide disparity between the testimonial evidence presented by Gates and the objective evidence contained in the photographs and medical reports, we note that when reviewing the factual findings of a trial judge, our review is to be a deferential one. We will not disturb on appeal factual findings unless there is clear error. Hasler v. United States, 718 F.2d 202 (6th Cir.1983), cert. denied, 469 U.S. 817 (1984). Substantial weight must be given to the opportunity of the trial court to assess the credibility and candor of the witnesses and evidence presented to it. A "finding of fact is clearly erroneous only when, though there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 394-395 (1948). Because of the critical role witness credibility, demeanor, and believability assume in a case such as this, we are not so firmly convinced that error has been made that we feel warranted in reversing the factual findings of the court below on this matter.
 
 
 8
 We are firmly convinced, however, that the district court erred when it found that Officer Guyton took part in the alleged assault. Not only was Officer Guyton's testimony not impeached, as was recognized by the court below, but all the witnesses for the defendants stated unequivocally that Officer Guyton was not present at the booking window when the struggle occurred. For example, Officer Lavalle, whose testimony was characterized as credible by the district court, testified that Guyton never had physical contact with Gates because he was not in the area of the scuffle. Sergeant Maciejewski, who witnessed the scuffle, testified that Guyton was not present during any of the incident. Officer Juanita Black also testified that during the time period in question, she was with Officer Guyton in the lobby where he was filling out citizen reports. And, when Officer Merriweather was asked who was around Gates when she was lying on the floor, he stated that the only other officers he recalled as present were Officers Burton, Lavalle, and Sergeant Maciejewski. Finally, Gates' testimony on Guyton's involvement is not particularly credible given that prior to trial she repeatedly stated that she was assaulted by only two officers, not four. As a result, we are firmly convinced that the court below erred in not amending its judgment to exclude Officer Guyton.
 
 
 9
 Lastly, we turn to the question of damages. Defendants argue that the award of $85,000 to plaintiffs, $75,000 of which was for alleged emotional distress suffered as a result of the incident, is grossly excessive. Based on the factual findings made by the court below, we are firmly convinced that the lower court erred in awarding $75,000 for emotional distress damages. Such an award is clearly erroneous. Plaintiff suffered virtually no physical injuries, and plaintiff did not consult with Dr. Bowers, her treating psychiatrist, after December of 1984. Dr. Bowers testified that at that time plaintiff was back to her pre-stress level. Furthermore, plaintiff was advised by Dr. Jackson, her own physician, that he felt that she could return to work by July. We also note that plaintiff suffered barely $1,200 in actual medical expenses. We believe, therefore, that such an award in light of her relatively minimal physical injuries and the finding of her psychiatrist that she was fully fit by the end of year in which she was allegedly beaten indicates clearly that the award of $75,000 for emotional distress damages was not so much to compensate the plaintiff but to punish the defendants for their conduct. We believe this to be inappropriate. Accordingly, we direct Gates to accept a remittitur of one-half the amount awarded for emotional distress damages or, in the alternative, agree to a new trial on the sole issue of damages.
 
 
 10
 Based on the foregoing, we affirm the judgment of the court below against each of the remaining defendants with the exception of Officer Guyton. Plaintiff is directed to accept the remittitur of one-half the emotional distress damages or participate in a new trial on the issue of damages.
 
 
 
 *
 The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation