857 F.2d 1475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MISCO, INC.; Mid-South Aluminum Company; and Everett W.
Fielder, Jr., Plaintiffs-Appellants,
v.
UNITED STATES STEEL CORPORATION and Alside, Inc.,
Defendants-Appellees.
 No. 87-6219.
 United States Court of Appeals, Sixth Circuit.
 Sept. 2, 1988.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and PATRICK J. DUGGAN, District Judge.*
 PER CURIAM.
 
 
 1
 This antitrust and contract action arises out of a siding manufacturer's termination of an exclusive distributorship. In 1984 the district court entered judgment for the defendants. On appeal we affirmed the judgment on all issues but one, and we remanded the case for further proceedings on that issue, which involved an alleged breach of contract. Misco, Inc. v. United States Steel Corp., 784 F.2d 198 (6th Cir.1986). After additional briefing the district court resolved the contract issue in favor of the defendant, holding that the plaintiff did not suffer any legally compensable damage. We shall affirm the judgment except as to the profit on 56 boxes of Alside products that were apparently shipped directly to one of the distributor's customers in violation of the contract.
 
 
 2
 * Plaintiff Mid-South Aluminum Company held a retail dealership for siding manufactured by defendant Alside. In June of 1969 Alside was purchased by defendant U.S. Steel. Representatives of that company approached the owner of Mid-South, plaintiff Everett W. Fielder, Jr., about becoming the exclusive wholesaler for Alside products in middle Tennessee. Fielder agreed, and he formed plaintiff Misco, Inc., to wholesale Alside's products. Misco built a warehouse in Nashville for storage and display of Alside merchandise. Both Misco and Mid-South used the warehouse.
 
 
 3
 In February of 1974 Alside decided to open its own warehouse in Nashville and to go into competition with Misco. In June of 1974 Dan Smith, Alside's principal sales representative to Misco, told Fielder of Alside's plans. Fielder was concerned that Smith's knowledge of Fielder's market would make Alside a tougher competitor than it would be otherwise, and Fielder offered Smith a job. Smith accepted. At the same time, Fielder arranged to obtain a line of siding from Mastic Corporation. In coordination with Smith, Fielder contacted Dickey Construction Company, Misco's largest customer, about buying the Mastic products.
 
 
 4
 Dickey needed some more Alside products for construction jobs where those products had been specified, and Misco's inventory was not sufficient to supply this need without replenishment. When he spoke with Dickey, Fielder testified, he had been waiting "for some time" for a truckload of Alside siding that would have enabled him to take care of Dickey. Alside's vice-president of sales was said to have assured Fielder that the material would be shipped from Knoxville, Tennessee for delivery on the 17th or 18th of July, but the shipment did not arrive. On July 19th, when Dickey sought to take delivery of the promised siding, Misco was unable to supply it. Fielder stated that he called the truckline to find out when delivery would occur and was told
 
 
 5
 "that as soon as they could unload the sizeable number of boxes on top of it of the same material over at Dickey Construction Company they would bring me my fourteen boxes.
 
 
 6
 When they finally got there with the fourteen boxes, the bill of lading showed that this material had originally been consigned to me. And the number "70" had been changed to "14".
 
 
 7
 I called the truckline to find out how this could happen. And they informed me that the shipper had had them, after the truckline had the material in their possession, had called them and had them reconsign all but fourteen boxes to Dickey Construction Company." [Deposition of Fielder at p. 113]
 
 
 8
 On July 24, 1974, Alside officially told Fielder of its intention to open a warehouse "shortly" in competition with Misco. Fielder promptly returned all unsold Alside merchandise to Alside and replaced it with merchandise from another company. Alside opened its warehouse in September of 1974.
 
 
 9
 Misco, Mid-South and Fielder then filed an action against U.S. Steel and Alside, asserting federal antitrust claims and pendent state claims. The district court dismissed the antitrust claims. On the basis of a stipulated record, the district court also held, as a matter of law, that Misco had received reasonable notice of the termination when Fielder learned of Alside's plans from Smith more than 30 days before the actual termination.
 
 
 10
 On appeal, we held that the district court erred in disposing of the reasonable notice question as a matter of law:
 
 
 11
 "what constitutes reasonable notice ... is a fact-specific inquiry dependent upon the length of the contractual relationship between the parties, the reliance which either party has placed upon the continuing vitality of the contractual relationship, the particular business involved, and the practices and customs in the industry."
 
 
 12
 Misco, 784 F.2d at 203. We affirmed the district court's judgment on every other issue, including the denial of the plaintiffs' motion for a jury trial. Id. at 205. The case was "remanded for further proceedings not inconsistent with this opinion." Id. at 206.
 
 
 13
 At a status conference following the remand the plaintiffs renewed their request for a jury, but the court indicated that it considered the matter closed. The court then issued a scheduling order reciting that the parties had agreed that "[t]he remaining issues are to be decided on the record currently before the court." The plaintiffs subsequently filed a memorandum arguing that they ought to be allowed to "adduc[e] proof in person from live witnesses," and the plaintiffs again moved for trial by jury. They also moved for leave to amend the complaint to set forth a state law conspiracy claim. Nowhere did the plaintiffs proffer or describe any evidence that was not already in the record.
 
 
 14
 The district court denied all of plaintiffs' motions and made findings of fact and conclusions of law disposing of the remaining contract issue. The court found that an exclusive distributorship existed and that Alside acted in bad faith by deliberately withholding notice of its decision to terminate the distributorship. Although Alside was thus found to have committed a breach of its implied contractual obligations, the district court went on to hold that the failure to give reasonable and good faith notice was not the proximate cause of any damage to the plaintiffs. Judgment was therefore entered in favor of the defendants, and this appeal followed.
 
 II
 
 15
 The plaintiffs argue first that the district court ought to have reopened the evidentiary record and ought to have granted a jury trial. The plaintiffs contend that damages could have been shown if the record had been reopened. We are not persuaded. The plaintiffs never told the district court what additional evidence they wished to introduce, and the issue of a jury trial had already been disposed of.
 
 
 16
 The plaintiffs argue further that Alside's secret dealings with Dickey enabled Alside to earn profits that it ought to disgorge because the exclusive distributorship was still in existence. Moreover, the plaintiffs maintain that the lack of reasonable notice caused them to lose good will and to lose their investment in the exclusive wholesaling relationship. Finally, the plaintiffs say, punitive damages ought to have been considered because, as the district court found, Alside acted in bad faith.
 
 
 17
 We find persuasive plaintiffs' arguments that Alside ought to disgorge any profits from direct dealings between it and Dickey in mid-July of 1974. As we read the record, the exclusive distributorship was still in effect when Alside bypassed Misco and shipped directly to Dickey. The district court thought that Misco's damages had been mitigated completely because Smith told Fielder of Alside's plans, but that does not appear to be the case as far as the appropriation of Dickey's order is concerned. The district court did not address Alside's direct dealing with Dickey during the existence of the exclusive distributorship, and we shall therefore remand the case for consideration of the question whether Alside should not be required to account to Misco for its profit on the sale to Dickey.
 
 
 18
 As to plaintiffs' other claims of damage, nowhere in the record is there evidence of any quantifiable monetary loss other than, perhaps, the cost of building the new warehouse. The loss of the value of investment in the new warehouse, like plaintiffs' alleged loss of good will, flowed from the termination of the exclusive distributorship, not from the lack of reasonable notice of termination. The punitive damages claim is without merit, because the only bad faith alleged concerns the breach of contract; both sides agree that a breach of contract does not give rise to punitive damages under Tennessee law. We see no abuse of discretion, furthermore, in the trial court's denial of the motion to amend the complaint.
 
 
 19
 The judgment is AFFIRMED in all respects but one, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation