**In re Benjamin H. MANN, Debtor.**

**KeyBANK NATIONAL ASSOC., Plaintiff,**

v.

**Benjamin H. MANN, Defendant.**

**Bankruptcy No. 95–15378.**
**Adversary No. 96–1140.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 23, 1998.

William L. Summers, Frederic P. Schwieg, Cleveland, OH, for Mr. Mann.

Scott Harbottle, Cleveland, OH, for Key-Bank

### MEMORANDUM OF OPINION AND ORDER

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

There are three related discovery issues before the Court:

(1) Motion of KeyBank to Compel Benjamin Mann to Appear for Deposition and Provide Deposition Testimony, and Mr. Mann's Response;

(2) Motion of Benjamin Mann for Protective Order Staying Deposition and Substituting Written Questions for Noticed Oral Deposition, and KeyBank's Response; and

(3) Motion of Benjamin Mann for an Order to Compel KeyBank to Provide Answers to Interrogatories and Request for Admissions, KeyBank's Response, and Mr. Mann's Withdrawal of Part II of his Motion.

This Memorandum of Opinion will first address the substance of the disputes (leaving aside the surrounding rhetoric) and will then consider the manner in which counsel have approached these issues in connection with the competing requests for sanctions.

### PROCEDURAL HISTORY

This dispute arises out of loans made by a predecessor to KeyBank to Bison Leasing Company and Bison Equipment Leasing Company, Inc. (collectively "Bison"). Benjamin Mann guaranteed the loans. In 1995, Mr. Mann filed for protection under Chapter 7 of the Bankruptcy Code seeking, among other things, to discharge his debt to Key-Bank in the amount of $1,243,402.97. Key-Bank responded with this complaint in which it asks that the debt be determined to be non-dischargeable under 11 U.S.C.

§§ 523(a)(2), (4) and (6). In a nutshell, Key-Bank alleges that Mr. Mann made fraudulent misrepresentations to KeyBank in connection with the loans and Mr. Mann denies the allegations.

This adversary proceeding was originally pending before a different bankruptcy judge and had a discovery cut-off date of October 18, 1996. That deadline was extended multiple times before discovery concluded on March 21, 1997 and KeyBank filed a Motion for Summary Judgment. Mr. Mann then moved to recuse the presiding judge. When that motion was granted, the case was reassigned to the undersigned on June 17, 1997. On August 15, 1997, KeyBank filed a motion to re-open discovery which was granted.

The Court held a pretrial soon thereafter. Mr. Mann had by that time been indicted for bank fraud relating to these transactions, and his criminal counsel attended the conference. The parties discussed the timing of the civil suit in light of the pending criminal prosecution, but at no time did Mr. Mann's counsel suggest that discovery should be stayed pending resolution of the criminal matter. Instead, the discovery and related dates were established with the consent of counsel.[1]

When that discovery period was about to expire, KeyBank moved yet again to extend it and to postpone the pretrial set for December 18, 1997. There is no reference in that Motion to any problems associated with the criminal prosecution. Mr. Mann agreed with the request and it was granted in part, setting a new discovery deadline of January 12, 1998, putting the parties on notice that no further extensions would be granted, and rescheduling the pretrial for February 26, 1998. As the discovery period drew to an end, this flurry of filings resulted.

### I. *KeyBank's Motion to Compel Mr. Mann to Appear for Deposition and Mr. Mann's Motion for a Protective Order, and the Responses to them.*

These motions raise essentially the same issue and will be addressed together for that reason. The material facts are not disputed.

### A. *Facts*

KeyBank took Mr. Mann's deposition in 1996. He apparently did not invoke a Fifth Amendment privilege against self-incrimination at that time. Following the re-opening of discovery, KeyBank noticed Mr. Mann for a second deposition to take place on January 9, 1998. A series of conversations and correspondence between counsel followed which centered on Mr. Mann's intention to invoke his Fifth Amendment privilege in the second deposition. These communications can best be summarized as unproductive.

On January 7, 1998, KeyBank filed a Motion for an Order compelling Mr. Mann to appear and testify at deposition. In it, Key-Bank claims that Mr. Mann was refusing to appear at a properly noticed deposition and that, as a consequence, he should be ordered to appear and testify. In the event that he fails to do so, KeyBank asks that judgment be entered in its favor on the pleadings. Mr. Mann responds that it would be unduly burdensome for him to appear since he intends to invoke his Fifth Amendment privilege and he has limited resources. He also argues that the requested deposition is to discover facts that are not relevant. Mr. Mann additionally states that entering judgment against him is an inappropriate sanction for failing to appear at deposition. Finally, he challenges KeyBank's motivations for pursuing the deposition.

The day after KeyBank filed its discovery motion, Mr. Mann filed his own Motion for a

---

1. The other topic addressed was KeyBank's pending Motion for Summary Judgment. Mr. Mann filed a Response to the Motion and Cross Motion for Summary Judgment, KeyBank filed a Memorandum in Response to Mr. Mann's Reply and Cross Motion for Summary Judgment, Mr. Mann filed a Reply brief to KeyBank's Memorandum in response to Mr. Mann's Reply and Cross Motion for Summary Judgment, and KeyBank filed a Supplemental Brief.

In light of the fact that KeyBank wanted to conduct additional discovery, thus indicating that the facts were not yet established, and given the Byzantine state of the briefing, the Court suggested that the Motion for Summary Judgment be withdrawn without prejudice so that the issues, evidence, and legal arguments could be re-focused at the end of the new discovery period. KeyBank did so withdraw its motion.

Protective Order, Staying Deposition, and Substituting Written Questions for Noticed Oral Deposition. In it, Mr. Mann moves for an order quashing [sic] the notice of deposition "until counsel for [KeyBank] either voluntarily or by court order complies with [Mr. Mann's] written discovery requests." He further moves that, after such time as KeyBank complies with Mr. Mann's discovery requests, KeyBank be limited to taking Mr. Mann's deposition by written questions after conclusion of the criminal trial. In response, KeyBank disputes Mr. Mann's version of their attempts to resolve this dispute, denies that KeyBank has not cooperated with discovery requests, states that any non-compliance is not grounds to refuse to provide discovery in return, explains its view of the relevance of the discovery request, and objects to the request that the deposition be limited to written questions.

A Joint Pretrial Statement filed February 19, 1998 indicates that Mr. Mann's criminal trial is expected to conclude on April 3, 1998.

Each side has threatened the other with sanctions in their pre-filing duel and indeed makes such a request in these motions.

### B. *Discussion*

■■■ Federal Rule of Civil Procedure 26(b)(1)[2] provides that the parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending claim. The information sought need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. Absent court order, the parties are free to engage in discovery in any sequence they choose. Fed.R.Civ.Pro. 26(d). The Rules both recognize that there are circumstances in which otherwise relevant evidence is protected from production by a privilege and provide a means by which a party may preserve that privilege:

(5) *Claims of Privilege* ... When a party withholds information otherwise discoverable under these rules by claiming that it is privileged ... the party shall make the claim expressly and shall describe the na-

ture of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.Pro. 26(b)(5). 7 James W. Moore, et al., MOORE'S FEDERAL PRACTICE § 30.43[2] (3d ed.1997). In addition to asserting privilege, a party may also move for a protective order to guard against "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.Pro. 26(c). Such a motion may only be filed after making a good faith attempt to resolve the issue without court intervention. In the face of discovery disputes, the decision as to the manner and timing in which discovery should proceed is left to the sound discretion of the trial court. *Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 206 (6th Cir.1986).

The Fifth Amendment to the Constitution of the United States guarantees that "no person shall be compelled in any criminal case to be a witness against himself[.]" Mr. Mann, who is under indictment for bank fraud arising out of the same or similar acts as those alleged in the bankruptcy complaint, certainly has a legitimate concern about protecting his privilege against self-incrimination. The question is the manner in which he should have raised the privilege in this civil proceeding and the consequences in this bankruptcy of his invocation of the privilege. In Mr. Mann's view, KeyBank has no right to even notice him for deposition. In the view of KeyBank, Mr. Mann has no right to refuse to appear and testify and he does so on penalty of having judgment entered against him.

■■■ The Court's view is different from those expressed by either party. KeyBank had the right under the discovery rules and the court order governing these proceedings to notice Mr. Mann for a second oral deposition under Federal Rule of Civil Procedure 30. If Mr. Mann wished to claim privilege, he had the obligation under Rule 26(b)(5) to make an express claim of privilege, describ-

---

2. Federal Rules of Bankruptcy Procedure 7026, 7030, 7031, 7036 and 7037 incorporate by refer- ence each Federal Rule of Civil Procedure cited in this Memorandum of Opinion.

ing the nature of his objection in a manner that would have allowed KeyBank to assess it. Mr. Mann did not follow this procedure. It is worth noting that following the Rules would have framed the issue more precisely for the parties, which often facilitates resolution. Similarly, if Mr. Mann believed that he had grounds in addition to privilege for seeking a protective order under Rule 26(c), he should have spelled out that argument for KeyBank in sufficient detail that a reasoned analysis could follow. He did not. It should also be noted that although Mr. Mann refused to appear for deposition on the ground that he had not received a satisfactory response to his own discovery requests, he has not cited any Federal Rule of Civil or Bankruptcy Procedure to support that position, and the Court is not aware of any such provision.

Despite Mr. Mann's multiple failures to comply with the Rules, that omission is not dispositive given the constitutional dimension of the underlying privilege at issue. On balance of Mr. Mann's right to invoke his privilege against self-incrimination and KeyBank's right to pursue its claim that the debt owed by Mr. Mann is non-dischargeable in this bankruptcy case, the Court finds that the discovery dispute will be resolved in this manner:

1. The discovery cut-off will be adjusted solely to permit KeyBank to take Mr. Mann's oral deposition at the conclusion of the criminal trial. That deposition is to be scheduled by the parties at a mutually convenient time no later than 20 days after the date on which the criminal trial concludes. Mr. Mann asks that the deposition be limited to written questions under Rule 31. That rule is inflexible, seldom used, and likely to cause additional disputes if applied to this case. See 8A Charles Alan Wright and Arthur K. Miller, FEDERAL PRACTICE AND PROCEDURE § 2132 (2d ed.1995). The request is, therefore, denied.

2. At deposition, KeyBank may pose any questions that are relevant or calculated to lead to relevant evidence on the topics stated in KeyBank's Motion to Reopen Discovery.

Mr. Mann may invoke whatever privileges he and his counsel believe are warranted by law in response to each such question. If Mr. Mann does invoke any privileges, the Court will determine the consequences of that action at the appropriate time, which will be after the deposition has taken place and the issues have been narrowed.

## II. *Mr. Mann's Motion for an Order to Compel KeyBank to Provide Answers to Interrogatories and Request for Admissions, and KeyBank's Response.*

### A. *Facts*

The next dispute is over Mr. Mann's Request to KeyBank for Admissions.[3] One of KeyBank's points is that Bison was required to file Borrower's Certificates from time to time as part of the lending relationship. KeyBank alleges that Mr. Mann, who prepared the documents for Bison, falsely included certain leases in the certificates. Mr. Mann claims that the leases were properly included in the certificates because they amounted to "fixed assets" on the books and records of Bison as that term is used in the loan documents. With that as background, Mr. Mann posed this Request for Admission:

Admit that the "missing leases" as identified in [KeyBank's] complaint were "fixed assets" on the books and records of Bison as defined in section 1.2 of the Credit Agreement.

KeyBank responded:

Denied, with the following explanation. *The Bank presently is not specifically aware of whether the "missing leases" were in fact carried on the books and records of Bison as "fixed assets."* Although the term "fixed assets" is not defined in Section 2.1[sic] of the Credit Agreement, the term "Recourse Lease Portfolio" is defined in that section to mean "those lease obligations maintained on the books and records of the Companies [i.e., Bison] as fixed assets." It is the Bank's position that Benjamin Mann, through the reporting prepared by him on behalf of Bison and provided to Bank,

---

**3.** Mr. Mann withdrew Part II of his Motion dealing with interrogatory answers.

falsely represented the "missing leases" to be "Recourse Leases" subject to the Bank's security interest. Bison's pledge of the "missing leases" to funding sources other than the Bank clearly violated the terms of the Credit Agreement and related Security Agreement. (Emphasis added).

Mr. Mann claims that this response does not fairly meet the request and instead poses and answers a different question. He contends that KeyBank cannot effectively claim lack of knowledge as a basis for not answering the request for admission. KeyBank's opposition is in large measure an argument about the merits of whether Bison engaged in fraudulent financial reporting to KeyBank. It states that it is under no obligation to admit issues "relating to the finer points of [Mr. Mann's] falsified and fraudulent bookkeeping."

### B. *Discussion*

 Federal Rule of Civil Procedure 36(a) provides:

(a) **Request for Admission.** A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . .

The purpose of a request for admission is to limit the issues in dispute between the parties, thus saving time and expense at trial. *The American Automobile Assoc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117 (5th Cir.1991). There is nothing in this Rule that prevents a party from asking an adverse party to admit a fact relating to finer points of matters in dispute. The request made by Mr. Mann is, therefore, one that is permitted by the discovery rules.

 Once Mr. Mann made an appropriate Request for Admission, KeyBank was required to respond within the parameters of Rule 36. Under the Rule, a party wishing to avoid making the requested admission must either object or answer. Once KeyBank elected to answer, its options were to admit the request, deny the request, give a qualified response, or state that it cannot admit or deny the request for lack of knowledge or information. Lack of knowledge or information is a permitted response only when the party states that, after reasonable inquiry, the information known or reasonably obtainable by it is insufficient to enable the party to admit or deny. Fed.R.Civ.Pro. 36(a). KeyBank did not select any of these options, replying instead with a hybrid statement of denial, followed by a claim that it is not specifically aware of whether the leases at issue were carried on the books and records in the manner indicated and a statement of its legal argument. The Rule does not offer this approach as an acceptable response.

 When an answer does not comply with the requirements of the Rule, the court may either order that the matter is admitted, permit an amended answer to be served, or defer decision to a pretrial conference or other time prior to trial. Fed.R.Civ.Pro. 36(a). Mr. Mann asks that an order be entered deeming this request admitted. Since this request is a cornerstone of KeyBank's case, however, and given the absence of prejudice to Mr. Mann, the more equitable course is to permit KeyBank to file an amended answer. After almost two years of discovery, KeyBank should be in a position to respond to this request without awaiting the second deposition of Mr. Mann. KeyBank is, therefore, to file and serve an amended answer to Request for Admission No. 1 within 20 days after the date on which this Memorandum of Opinion and Order is entered.

### III. *Requests for Sanctions*

Both sides have asked that sanctions be entered against opposing counsel under Federal Rule of Civil Procedure 37. That Rule provides that failure to comply with various discovery rules may result in sanctions unless, among other things, circumstances make an award of expenses unjust. Using this standard, it is appropriate to consider the manner in which these disputes have been addressed by the parties.

### A. *Facts*

This case involves important property and liberty rights. Mr. Mann seeks both to pro-

tect himself against self-incrimination in the criminal prosecution and to be relieved from a significant debt as part of his bankruptcy case; KeyBank, in turn, has a legitimate interest in attempting to preserve its right to collect a large debt from the individual who guaranteed it. Neither side, however, seems willing to consider that there may be some merit to the other's viewpoint and hence some reason to accommodate competing concerns and compromise these discovery issues. This is complicated by the fact that counsel appear to have forgotten that the dispute is between their clients and not between them personally. The full record must be reviewed to appreciate the tenor of the arguments, but a few quotations from the attorneys' communications will illustrate the point:

> It has been my experience that when bank's [sic] cause unfair prosecutions, they never realize the impropriety of this conduct until it is far too late. Sort of the arrogance of power in it's [sic] finest glory. (Letter from Mr. Mann's criminal counsel [4] to KeyBank's counsel).

> In the face of overwhelming evidence of fraud, [Mr. Mann] offers a series of flimsy, disingenuous arguments that collapse under the slightest scrutiny ... contains astounding representations ... [and includes] a shameless effort to bolster th[e] flimsy premise.... (Response of KeyBank to Mr. Mann's Motion to Compel).

> As you well know, we won't be attending the above-mentioned deposition and I would ask that you quit wasting our time. Perhaps you know of some law that you can use to compel our attendance. Otherwise, please do not expect us on the 9th day of January 1998. (Letter from Mr. Mann's criminal counsel to KeyBank's counsel).

> Defendant's Motion demonstrates a disturbing lack of concern for accuracy—as evidenced by the first page where [Mr. Mann's counsel] misspells the names of KeyBank counsel, his own co-counsel, and last but not least, the name of the Bank-

ruptcy Judge to whom this matter is assigned. While these errors are obviously harmless, the additional inaccuracies and misrepresentations set forth by [Mr. Mann's] criminal counsel in [Mr. Mann's] Motion are far less amusing and raise serious concerns of attorney misconduct. (Response of KeyBank).

> [KeyBank's] Counsel interestingly has submitted a premature, pedantic motion.... (Motion of Mr. Mann for Protective Order).

> [Mr. Mann's arguments are] downright silly. Filing a Motion to Compel under these circumstances is inexcusable. [And seeking sanctions is] adding yet another layer of Kafkaesqe absurdity. (Response of KeyBank to Mann's Motion to Compel).

Mr. Mann capped off this exchange with the threat that KeyBank's "counsel has been informed that he will certainly be called personally to testify in the criminal matter." (Mr. Mann's Motion for a Protective Order).

### B. *Discussion*

The American Bar Association Section of Litigation identifies these goals in its "Guidelines to Litigate By":

### Lawyers' Duties to Other Counsel

1. .... We will treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications.

2. We will not, even when called upon by a client to do so, abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses. We will abstain from disparaging personal remarks or acrimony toward other counsel, parties or witnesses ...

\* \* \*

4. We will not, absent good cause, attribute bad motives or improper conduct to other counsel.

5. We will not lightly seek court sanctions.

---

**4.** Mr. Mann is also represented by bankruptcy counsel whose litigation approach is not at issue in this Memorandum of Opinion.

Closer to home, the Cleveland Bar Association has adopted a Lawyer's Creed of Professionalism that states:

B. With respect to opposing parties and their counsel: I will endeavor to be courteous and civil, both in oral and in written communications.

While the Guidelines and the Creed are aspirational, they nevertheless set forth standards that are consistent with the requirement in the Federal Rules of Bankruptcy Procedure that parties and their attorneys exhibit good faith in their dealings with each other over discovery issues. They also complement Local Bankruptcy Rule 7026–1 which requires parties to make sincere attempts to resolve discovery problems.

■ The rhetorical excesses in this case were not designed to resolve the discovery disputes and, not surprisingly, they did not accomplish that end. As between lawyers, exchanges of the sort quoted are time-consuming to create and aggravating to receive. Moreover, they have a tendency to develop a life of their own as each side seeks to raise the bar of verbal intimidation. From the viewpoint of this judicial officer, communications like this are not a sign of strength or a mark of steely endurance. They are, instead, an indication that one either lacks civility or has chosen not to employ it. The ABA "Guidelines to Litigate By" suggest that judges adopt this viewpoint: "We will bring to lawyers' attention uncivil conduct which we observe." Consider it done.

Based on all of the circumstances of this case, the Court finds that the parties did not make reasonable attempts to resolve these discovery disputes and that justice requires that each side bear its own costs and expenses. All requests for sanctions are, therefore, denied.

### CONCLUSION

For the reasons stated:

(1) KeyBank's Motion to Compel Benjamin Mann to Appear for Deposition and Provide Deposition Testimony is granted in part and denied in part;

(2) the Motion of Benjamin Mann for Protective Order Staying Deposition and Substituting Written Questions for Noticed Oral Deposition is granted in part and denied in part;

(3) the Motion of Benjamin Mann for an Order to Compel KeyBank to Provide Answers to Interrogatories and Request for Admissions is granted in part and denied in part; and

(4) the parties are to proceed in the manner outlined above.

IT IS SO ORDERED.