865 F.2d 1267
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ted BENDER, Jr., Plaintiff-Appellant,
v.
GOODYEAR TIRE & RUBBER COMPANY; Local 20, Teamsters,
Chaufferers, Warehouseman & Helpers, Defendants-Appellees.
 No. 87-3624.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1989.
 
 Before KEITH and KRUPANSKY, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Ted Bender, Jr. appeals from the district court's granting of summary judgment in favor of defendants Goodyear Tire and Rubber Company (Goodyear or the Company) and Local 20, Teamsters, Chauffers, Warehousemen and Helpers (Teamsters or the Union) in this hybrid Sec. 301 action for wrongful discharge and breach of the duty of fair representation. See 29 U.S.C. Sec. 185. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * The Union and the Company are signatories to a collective bargaining agreement which sets forth the terms and conditions of employment with the Company. Pursuant to this agreement, the Union is recognized as the exclusive bargaining representative for all employees of the Company, except for supervisory, clerical, office, and sales employees.
 
 
 3
 The Company hired appellant in August, 1982, as an auto technician at one of its stores in Toledo, Ohio. He was informed that the store was a union shop and that if he had any problems concerning his job, he should take it up with Frank Stevens, the union steward. Appellant was also informed that bargaining unit employees would be required to attend training sessions or seminars put on by the Company.
 
 
 4
 During the course of his employment, appellant was given two warnings for unsatisfactory work performance. On one of these occasions, the Company was going to suspend appellant for failing to tighten brake hoses, which resulted in a customer losing control of his car, but reduced the punishment to a warning after the union intervened.
 
 
 5
 Appellant was told that he was to attend a week long training session for hands-on experience, which would be held from October 29, 1984 through November 2, 1984, in Niles, Ohio.[1] Prior to attending this seminar, he was informed by the Company that he would be required to transport two other employees from other Toledo stores.
 
 
 6
 On Sunday, October 28, 1984, appellant drove these employees to Niles, Ohio in his truck. Upon arriving in Niles, Ohio, the three men checked into the motel at which the Company trainees were to stay for the week. Appellant shared a room with another Company employee, although it was not one of the men that came with him from Toledo.
 
 
 7
 At the initial training session, the instructor introduced himself, wrote his work and home phone numbers on the chalk board, and passed out training materials. The instructor told the trainees to write down the phone numbers and informed them that if any trainee had any problem, at any time, they should call him at one of the numbers. Further, the trainees were warned by the instructor that any misconduct, such as fighting and stealing, would result in discharge from the Company.
 
 
 8
 On the evening of October 31, 1984, the third day of the week long seminar, appellant met Dan, one of the men he transported from Toledo, and another man. Appellant agreed to drive the two men to a bar. After spending time at the bar, a dispute arose over the use of appellant's truck.
 
 
 9
 When the three men reached the parking lot, Dan insisted on driving. Appellant responded by refusing to allow Dan to drive his truck, and indicating that if Dan wanted a ride he should get in the back of the truck. After hearing his response, Dan started moving toward appellant and said "I'm going to cut you up in little pieces, if they find you, you'll be found in the back of a van somewhere in Florida." Appellant ran to his truck, jumped in and drove off, leaving the two other men in the parking lot. He drove directly to the hotel. When he arrived at the hotel, he went to his room and packed up his belongings. He told his roommates to tell his instructor that he had gone back to Toledo. Appellant then left his room, got in his truck and drove off. Appellant drove back to Toledo. He arrived back in Toledo at approximately 6:00 a.m. on the morning of November 1, 1984.
 
 
 10
 Later that morning, appellant told the assistant manager of the store what had happened in Niles. He was told to stay home until further notice. Two days later, appellant and the union steward met with the store manager. After listening to appellant's story, the manager handed him a document dated October 31, 1984, and told him that he was fired because he did not complete the mandatory training session, and therefore had violated company policy. After the meeting, the steward told appellant to file a grievance.
 
 
 11
 On the following Monday, November 5, 1984, appellant met with Robert Robaszkiewicz, a business representative for the union, and filed a grievance. A meeting with the company was then scheduled pursuant to the collective bargaining agreement. Appellant was invited and encouraged to attend the meeting.
 
 
 12
 Two meetings were subsequently held. At those meetings the Union and appellant advanced several reasons why the Company did not have just cause for the discharge. At the second meeting, appellant was permitted to present an opening statement and to question Company representatives. At both meetings, the Union urged the Company to reinstate appellant with full benefits and back pay. The Company, however, refused reinstatement.
 
 
 13
 The Union decided not to arbitrate appellant's grievance. Appellant appealed the decision to the Union's Executive Board. After holding a hearing, at which appellant explained why he felt the Union should arbitrate his grievance, the Board decided that the grievance could not be won at arbitration and, therefore, arbitration would not be pursued.
 
 
 14
 Appellant subsequently filed an unfair labor practice charge against the Union and the Company with the National Labor Relations Board.
 
 
 15
 In June of 1985, appellant was notified by the Regional Director of the NLRB that a complaint would not be issued in his case:
 
 
 16
 The investigation disclosed that the Union accepted and processed your grievance concerning your discharge through several steps of the grievance procedure. The Union refused to further process the grievance because of good faith doubt of successfully prevailing based on the available evidence. Moreover, there was an absence of probative evidence presented or adduced during the investigation to establish that the Union's decision was based on any arbitrary, invidious or unfair considerations. Therefore, I am refusing to issue complaint in this matter.
 
 
 17
 Appellant appealed this decision to the General Counsel. His appeal was denied. In denying the appeal, the General Counsel made the following observations:
 
 
 18
 With respect to your allegation that the Union unlawfully refused to process your grievance and/or failed to adequately represent you in the processing of your grievance, the evidence established that the Union investigated your grievance and thereafter met with the Employer in an effort to persuade the Employer to reinstate you with full back pay. Under the Act, a Union possesses a broad range of discretion in determining whether to process or proceed with a grievance. Absent evidence of arbitrary, capricious or discriminatory motivation, the fact that a Union fails to arbitrate a grievance is not, in itself, a breach of its duty of fair representation.
 
 
 19
 On April 29, 1985, appellant filed his complaint alleging that the Company breached the collective bargaining agreement in discharging him, and that the Union failed to represent him in good faith. Appellant also made a jury demand. On November 19, 1985, the Union filed a motion to strike appellant's jury demand. On January 14, 1986, the parties consented to Magistrate James Carr's exercise of jurisdiction over the case. On February 25, 1986, the court granted the Union's motion to strike the jury demand without prejudice. During the course of discovery, defendants filed motions for summary judgment.[2] Oral argument was held on these motions on March 24, 1987 and the matter was taken under advisement. The magistrate filed a memorandum and order on May 27, 1987 granting defendants' motions for summary judgment. The court founded its decision on its determination that the Company was within its rights when it terminated appellant. Appellant timely appeals from this decision.
 
 
 20
 Appellant argues that the court erred in granting summary judgment for both defendants, in limiting discovery, and in striking his demand for a jury trial.[3]
 
 II
 
 21
 "When reviewing a lower court's grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure, we apply a de novo standard of review, making all reasonable inferences in favor of the party who did not move for summary judgment." Storer Communications, Inc. v. National Ass'n of Broadcast Employees and Technicians, 854 F.2d 144, 146 (6th Cir.1988) (citations omitted). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." Gutierrex v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).
 
 A.
 
 22
 It is settled that a plaintiff pursuing a hybrid section 301 action must show that his employer breached the collective bargaining agreement and that his union violated its duty of fair representation. "To prevail against either the Company or the Union [a hybrid Sec. 301 plaintiff] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976).
 
 
 23
 The district court based its decision to grant summary judgment on the conclusion that Goodyear did not wrongfully discharge appellant.
 
 
 24
 The plaintiff claims that his termination violated the collective bargaining agreement, and that the union breached Sec. 301 in its handling of the grievance and subsequent refusal to request arbitration. Because I conclude that the company was entitled under the agreement to terminate the plaintiff when he failed to satisfy its requirement that he complete the training session, it is entitled to judgment in its favor with regard to the plaintiff's wrongful discharge claim. Consequently, in view of that resolution of the claim against the employer, the union is likewise entitled to judgment on the claim that it failed in its duties under Sec. 301.
 
 
 25
 Bender v. Goodyear Tire & Rubber Co., No. C85-7456 (N.D.Ohio May 27, 1987).
 
 
 26
 It was uncontroverted that appellant was aware that attendance at the training seminars was mandatory. He was also aware that any misconduct at the seminars would lead to discharge, and that if any problems arose at any time, he was to contact the training instructor. Article XV Section 1 of the Collective Bargaining Agreement between Goodyear and the Union provides that "[t]he right to hire, discharge, or discipline for cause ... is the responsibility of the Company, except that Union members shall not be discriminated against as such."[4]
 
 
 27
 The issue concerning the action against the Company therefore becomes whether the discharge was for just cause. Based on the uncontroverted facts, we agree with the district court's determination of the section 301 claim. Although it may be unfortunate that appellant was put in a situation where he may have feared for his safety, it does not change the fact that he left the session without seeking permission or even giving notice to the Company. Appellant was on notice of the consequences of such an action. We note further that appellant testified at his deposition that fear was not his only consideration when he decided not to call the instructor:
 
 
 28
 Q. Why didn't you call the instructor, tell him what was happening, ask for some help?
 
 
 29
 A. I just wanted out of there, I didn't think of it.
 
 
 30
 Q. Did you think of the fact that he had told you that you could be fired if you got into a fight at that time?
 
 
 31
 A. Yes.
 
 
 32
 It is undisputed that the Company had the contractual right to discharge for cause and that completion of the seminar was a mandatory condition of employment. It is also undisputed that appellant left the seminar without notifying his employer. We believe appellant's actions gave the Company just cause for his discharge. Accordingly, we hold that appellant's discharge was not contrary to the contract, and therefore the Company was entitled to summary judgment in its favor. Since an employee must show a breach of the contract in order to prevail against the union on his breach of the duty of fair representation claim, the Union is also entitled to summary judgment.[5]
 
 B.
 
 33
 Bender also claims that the magistrate committed reversible error in limiting and finally terminating discovery.
 
 
 34
 Initially, we note that "the district court has broad discretion in regulating discovery." Misco, Inc. v. United States Steel Corp., 784 F.2d 198, 206 (6th Cir.1986).
 
 
 35
 The essence of appellant's argument is that he should have been granted further discovery under Fed.R.Civ.P. 56(f).[6] Rule 56(f) does not provide a safety net for parties who are not diligent in pursuing discovery.
 
 
 36
 In certain circumstances courts have indicated that continuances would be proper even though Rule 56(f) had not been formally complied with when the court felt that the party opposing summary judgment had been diligent and had acted in good faith. However, the rule will not be liberally applied to aid parties who have been lazy or dilatory.
 
 
 37
 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure Sec. 2740 p. 532-35 (2d ed. 1983) (footnotes omitted) (emphasis added). See also King v. National Indus., Inc., 512 F.2d 29, 34 (6th Cir.1975) (Rule 56(f) was not designed for situation where plaintiff's discovery problems are caused by lack of diligence).
 
 
 38
 In making his October 7, 1986 order, terminating discovery, the magistrate expressly noted that the appellant had not been diligent in undertaking his discovery. A review of the record substantiates the magistrate's conclusions. Given the district court's discretion in discovery matters and appellant's lack of diligence, we hold that the magistrate did not commit reversible error in his discovery rulings.
 
 
 39
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Appellant had previously attended other training sessions for the Company
 
 
 [2]
 The Union filed its motion on May 27, 1986 and the Company filed on June 10, 1986
 
 
 [3]
 Because we believe the district court properly granted summary judgment, we do not reach the issue of the right to a jury trial in hybrid section 301 actions. We note however that this court has indicated, in dicta, that a limited right to a jury trial does exist. See Wood v. International Bhd. of Teamsters, 807 F.2d 493, 504-05 & n. 3 (6th Cir.1986) (Contie, J., concurring)
 
 
 [4]
 Although appellant alleges an anti-union animus in his discharge, he presented no evidence that he was a union activist or any other evidence to support this allegation
 
 
 [5]
 Even if appellant had made out a viable claim against his employer, we do not believe the Union breached its duty of fair representation
 A breach of [the duty of fair representation] occurs 'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.' A union's conduct may be sufficiently arbitrary to establish a breach of its duty to fairly represent its members when it handles a grievance in a 'perfunctory' manner, with caprice or without rational explanation. The employee need not necessarily show bad faith yet mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty.
 Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir.1983) (citations omitted). Given the facts of this case, we believe appellant's allegations at most demonstrate mistaken judgment by the Union, which does not establish a breach of the Union's duty of fair representation.
 
 
 [6]
 Rule 56(f) provides as follows:
 (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.