**ASSOCIATION OF DATA PROCESSING SERVICES ORGANIZATIONS, INC.; ADP Network Services, Inc.; Comshare Network Services, Inc.; Comshare Inc.; National CSS, Inc.; On-Line Systems, Inc.; Quantum Computer Services, Inc.; and Tymshare, Inc., Plaintiffs,**

v.

**CITIBANK, N.A., and John G. Heimann, as Comptroller of the Currency, Defendants.**

**77 Civ. 2574 (KTD).**

United States District Court, S. D. New York.

Dec. 15, 1980.

John S. Martin, Jr., U. S. Atty., for the Southern District of New York, New York City, Attorney for Defendant John G. Heiman.

Clarence W. Olmstead, Jr., Shearman & Sterling, New York City, (Attorneys for Defendant Citibank).

Satterlee & Stephens, New York City, of counsel: Henry J. Formon, New York City, (Attorneys for Plaintiffs).

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs, Association of Data Processing Services Organizations, Inc. [hereinafter "ADAPSO"] and some of its computer services company members, bring this action against Citibank, N.A. [hereinafter "Citibank"] and the Comptroller of the Currency [hereinafter the "Comptroller"]. Plaintiffs allege that Citibank's offer and sale of certain computer services and the Comptroller's authorization of such business activities in Interpretative Ruling 7.3500 [hereinafter "I.R. 7.3500"] violate Section 24 of the National Bank Act, 12 U.S.C. § 24 (1976). Both plaintiffs and defendant Citibank have moved for summary judgment.

Citibank counterclaims against ADAPSO alleging that plaintiffs' action is a sham designed solely to eliminate competition from the data processing service industry. Plaintiffs move to dismiss the counterclaim for failure to state a claim upon which relief may be granted.

Finally, the Comptroller cross-moves for an order staying this action. Today I decide only the motion to dismiss the counterclaim and the Comptroller's motion for a stay.

I turn first to the plaintiffs' motion to dismiss the counterclaim asserted by Citibank against ADAPSO.

By its counterclaim, defendant Citibank alleges that plaintiffs' action is a sham intended solely to delay or prevent Citibank's lawful entry into the data processing services market. According to Citibank, plaintiffs' purpose is to restrain trade in violation of § 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1 (1970).

█ In support of its motion to dismiss Citibank's counterclaim for failure to state a claim, plaintiffs rely on the doctrine announced by the Supreme Court in *Eastern Railroad Conference v. Noerr Motor Freight, Inc. ["Noerr"]*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers of America v. Pennington ["Pennington"]*, 381 U.S. 657, 669–671, 85 S.Ct. 1585, 1592–94, 14 L.Ed.2d 626 (1965). The *Noerr-Pennington* doctrine protects First Amendment rights to associate for political purposes and to petition the government by immunizing conduct designed to influence legislative or executive action from antitrust liability.

The *Noerr-Pennington* doctrine was extended to the adjudicative process in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The Supreme Court in *California Motor Transport* stated:

"We conclude that it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their

business and economic interests vis-a-vis their competitors." 404 U.S. at 510, 92 S.Ct. at 611. The plaintiffs read this to mean that the bringing of lawsuits does not give rise to antitrust liability.

The court in *Noerr,* however, specifically pointed out that the Sherman Act would be applicable where the action taken by the plaintiff is merely a sham to cover what is actually an attempt to interfere directly with the business of a competitor. 365 U.S. at 144, 81 S.Ct. at 533. Thus, the right to petition the court for relief may not be used simply as a cloak to achieve unlawful ends.

■ In an attempt to invoke the "sham" exception to the *Noerr-Pennington* doctrine, Citibank alleges that plaintiffs' action is baseless and is "part of a larger, overall conspiratorial scheme concocted by ADAPSO's members to damage Citibank and preserve the banking and economic data processing market for themselves." Such conclusory allegations without more, however, do not satisfy Citibank's burden of showing that what appears to be an exercise of the right to petition is in reality a sham designed solely for illegal purposes. See *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board,* 542 F.2d 1076, 1082–83 (9th Cir. 1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977).

Citibank has failed to make any specific allegations which prove that the activities of plaintiffs both before this court and before the Federal Reserve Board [1] have been anything other than bona fide attempts to secure various forms of relief. In the absence of such allegations, plaintiffs should not have to litigate antitrust claims based upon their institution of this action. Accordingly, Citibank's counterclaim is dismissed.

■ The second motion before this court is the Comptroller's request for a stay of this action until certain administrative proceedings are completed.

The Comptroller first argues that the doctrine of primary jurisdiction requires the court to stay this action pending completion of the Comptroller's proposed reconsideration of the I.R. 7.3500. This interpretative ruling states the opinion of the Comptroller on the scope of permissable data processing services under Section 24 of the National Bank Act. The reasons cited for the reconsideration are the "radical changes" in electronic data processing since the ruling was last revised on April 24, 1974, 39 Fed.Reg. 14195. The Comptroller argues that, if afforded a suspension of these proceedings, he will be able to instruct the court on complex bank activities and policy which allegedly will impinge upon the issues presented in this case.

Alternatively, the Comptroller argues that this action should be stayed pending the outcome of certain proceedings before the Federal Reserve Board [hereinafter "FRB"]. These proceedings involve a petition by Citicorp, a bank holding company and parent corporation of Citibank, to move the data processing activities in question in this lawsuit from Citibank to a non-banking subsidiary of Citicorp. It is the Comptroller's contention that if Citicorp prevails on its petition, this action will be moot.

For the reasons that follow, I hold that the doctrine of primary jurisdiction does not require a stay of this proceeding until the

---

1. Some of the activities focused on by Citibank include:

(1) Settlement negotiations between Citibank and ADAPSO which were willingly participated in by both parties;
(2) A lawful challenge to the Citicorp application to the Federal Reserve Board to transfer the Citibank data processing activities to a non-banking subsidiary;
(3) The maintenance of another lawsuit before this court by a data processing company which is not a plaintiff in this action;

(4) The reporting by ADAPSO represent to the association's members on the status of this litigation and other challenges to banks that offer and sell data processing services; and
(5) ADAPSO's withdrawal of its opposition to a Citicorp Federal Reserve Board application involving the transfer of certain credit card operations to a subsidiary.

Comptroller reviews I.R. 7.3500 but it does require that I postpone further action in this case until the Federal Reserve Board renders a decision on Citicorp's petition. Such a stay will effectively coordinate the work of the court and the Federal Reserve Board as well as conserve both private and judicial resources without prejudicing the rights of the parties.

The plaintiffs in this case seek a determination of whether certain well-defined electronic data processing activities admittedly engaged in by Citibank are lawful under the National Bank Act. The Comptroller does not propose to consider the data processing activities of specific banks such as Citibank nor does the National Bank Act or the Comptroller have established procedures for a determination of this kind of dispute. The Federal Reserve Bank proceeding, on the other hand, involves essentially the same parties and activities as this lawsuit.[2] A full adversarial hearing is scheduled to determine whether the data processing activities Citicorp proposes to transfer to a non-banking subsidiary are "so closely related to banking or managing or controlling banks as to be a proper incident thereto," within the meaning of the Bank Holding Company Act. 12 U.S.C. 1843(c)(8). If Citicorp prevails on its petition before the Federal Reserve Board, most of the activities at issue in this lawsuit will be moved from Citibank to a non-banking subsidiary of Citicorp and this action will be moot, at least as to those particular activities. If Citicorp's petition is not approved, then this court may at that time determine whether Citibank may lawfully perform the data processing activities at issue in this case.

The proceedings herein are stayed pending the outcome of Citicorp's petition to the Federal Reserve Board. The plaintiffs' and Citibank's motions for summary judgment will be held in abeyance until that time. Citibank's counterclaim against the plaintiffs is dismissed. The matter is to be transferred to the suspense docket of the court.

So ordered.

2. *See* 45 Fed.Reg. 41533 (June 19, 1980).