**SALOMON S.A.; Salomon/North American, Inc.**

v.

**ALPINA SPORTS CORP.; Alpina.**

Civ. No. 88–206–D.

United States District Court,
D. New Hampshire.

May 18, 1990.

Steven E. Hengen, Concord, N.H., Neil F. Greenblum, Arlington, Va., for plaintiffs.

Joseph F. Daschbach, Lebanon, N.H., Harvey Jacobson, Jr., Washington, D.C., for defendants.

## ORDER

DEVINE, Chief Judge.

This Order addresses four pretrial motions asserted in this patent infringement action. The action was initiated by Salomon, S.A., a French manufacturer, and its North American counterpart, claiming that Alpina Sports Corporation, a competitor based in Yugoslavia, is manufacturing alpine ski boots that infringe patents which Salomon holds. Jurisdiction is based on 28 U.S.C. § 1338(a).[1]

### 1. Alpina's Counterclaim

On November 27, 1989, about one and one-half years after the action was commenced, defendants filed a counterclaim for unfair competition. Salomon moves to strike that counterclaim, arguing first that it was untimely filed.

■ As a general rule, counterclaims must be filed within twenty days after service of the summons and complaint. Rule 12(a), Fed.R.Civ.P. Plainly, Alpina's unfair competition counterclaim was not filed within that period. The federal rules do, however, allow for late-filed counterclaims in appropriate circumstances.

> **Omitted Counterclaim.** When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

Rule 13(f), Fed.R.Civ.P. Rule 13(f) is interpreted liberally, and amendment is freely granted in order to settle all claims in one action. *Four Seasons Solar Products Corp. v. Sun System Prefabricated Solar Greenhouses, Inc.*, 101 F.R.D. 292 (E.D.N.Y.1983); *2001, Inc. v. Novaglas Corp.*, 60 F.R.D. 649 (E.D.N.Y.1973). As recommended by one respected commentator, such amendment is particularly appropriate when the counterclaim is compulsory or permissive.

> Subsection (f) will find its most useful application in the case of compulsory counterclaims. Inasmuch as a party could later be met successfully with a plea of res judicata in a suit on a claim within subdivision (a) which he had failed to plead, the courts should be very liberal in allowing amendments to include compulsory counterclaims, and even permissive counterclaims where no prejudice would result, where the pleader has not been guilty of inexcusable neglect, or has not by reprehensible conduct deprived himself of any claim to special consideration by the court.

3 J. Moore, *Moore's Federal Practice* ¶ 13.33, at 13–196 (1989). *See also* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1430

---

**1.** Section 1338(a) vests this court with authority to resolve patent disputes:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant vari-

ety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

(1990) ("Generally, courts have been quite liberal about granting leave to amend under Rule 13(f).")

■ In its unfair competition counterclaim, defendants contend that Salomon's acquisition of numerous patents improperly monopolized the market. Thus, the counterclaim "arise[s] out of the transaction or occurrence that is the subject matter" of Salomon's claim, Rule 13(a), and it is therefore properly treated as a compulsory counterclaim.

As Salomon asserts, failure to obtain leave of the court before asserting an omitted counterclaim can result in rejection of the counterclaim. *See, e.g., Richardson Greenshields Securities, Inc. v. Mui–Hin Lau*, 113 F.R.D. 608 (S.D.N.Y.1986); *Oy Tilgmann, AB v. Sport Publishing Int'l, Inc.*, 110 F.R.D. 68 (E.D.Pa.1986); *Strauss v. Norwegian Caribbean Lines*, 613 F.Supp. 5, 7 (E.D.Pa.1984); *Chrysler Corp. v. Fedders*, 540 F.Supp. 706, 713 (S.D.N.Y. 1982). And here, defendants did not seek leave to file their counterclaim until long after it was filed.

Nonetheless, in the interest of justice, the Court chooses to allow defendants to pursue their counterclaim for unfair competition. Although the addition of such claim will complicate the case, patent infringement and unfair competition claims often appear in the same action. *See, e.g., Blonder–Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Schnell v. Peter Eckrich & Sons*, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); *Sears Roebuck & Co. v. Mackey*, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922); *Atari Games Corp. v. Nintendo of America*, 897 F.2d 1572 (Fed.Cir.1990); *Xeta, Inc. v. Atex, Inc.*, 825 F.2d 604 (1st Cir. 1987). Moreover, Salomon amended the complaint shortly before defendants asserted the contested counterclaim. It seems somewhat inequitable to allow Salomon to revise their theory of the case yet deny defendants the same opportunity. *Cf. Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D.Del.1970) ("Since the amending pleader chooses to redo his original work, ... he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading.").

Salomon asserts that defendants failed to file the counterclaim earlier in an effort to harass Salomon. Defendants reject that assertion and counter that they filed their counterclaim shortly after learning that Salomon had acquired a number of patents of which it was making no use. The Court will not assume that defendants are dissembling. As Judge Weinstein stated in resolving a similar issue, "Although plaintiff attacks the bona fides of the excuse, we accept it as well founded for the purposes of this preliminary motion because there is a strong presumption that an attorney will not mislead the court." *2001, Inc., supra*, 60 F.R.D. at 650.

The Court prefers not to resolve this dispute in piecemeal fashion and, accordingly, Alpina's motion for leave to file a counterclaim for unfair competition is herewith granted.

## 2. Salomon's Motion to Dismiss

■ Salomon moves to dismiss the counterclaim under authority of Rule 12(b)(6), Fed.R.Civ.P., contending that the counterclaim for unfair competition fails to state a claim upon which relief can be granted. In a 1976 opinion for this court, Judge Bownes provided the following definition of "unfair competition":

The legal concept of unfair competition is "the child of confusion." It is a broad equitable doctrine that has evolved in response to predatory business practices and is designed to enforce "increasingly higher standards of fairness or commercial morality in trade."

Applying "commercial morality" to a particular set of facts is a difficult judicial task for it can be cogently argued that such a concept is a *non sequitur*. Nevertheless, the law has provided that a person is liable for unfair competition if he engages in conduct which deceives the

general buying public. The standard is easier to state than apply for the "child of confusion," has matured, become fertile, and spawned a body of law that lacks in judicial definition and scope. *Jacobs v. Robitaille,* 406 F.Supp. 1145, 1151 (D.N.H.1976). Because of the fact-based nature of the inquiry, this issue seems especially immune to Rule 12 dismissal.

Salomon's motion to dismiss is only appropriate if Alpina "is not entitled to relief under any set of facts [it] could prove." *See Chasan v. Village Dist. of Eastman,* 572 F.Supp. 578, 579 (D.N.H.1983), *aff'd without opinion,* 745 F.2d 43 (1st Cir. 1984). *See also Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987).

The essence of Alpina's theory is summarized in paragraphs 34 and 37 of the counterclaim:

> 34. Salomon France has accumulated a vast number of patents, both U.S. and foreign. Certain of these patents, including certain of the patents in suit, were based not on any development activities of Salomon France but, rather, were acquired from third-parties for the sole purpose of creating a vast patent portfolio to enforce against competition and to limit competition.

> 37. Prior to initiation of this action, Counterclaim-defendant Salomon France threatened Counterclaim-plaintiff Alpina Yugoslavia with patent infringement and proposed to resolve the dispute upon terms that would have required Alpina Yugoslavia to limit the quantities of its alpine ski boot products sold to the market, including the United States.

The Court herewith finds these allegations sufficient to state a claim for unfair competition; therefore, dismissal is inappropriate here. *See Jenn–Air Corp. v. Modern Maid Co.,* 499 F.Supp. 320 (D.Del.1980), *aff'd without opinion,* 659 F.2d 1068 (3d Cir.1981) (allegation that suit was brought for sole purpose of restraining competition saves unfair competition claim). *Accord, Stadium Mfg. Co. v. Plymouth Pajama Corp.,* 24 F.Supp. 779, 781 (D.Mass.1938). Salomon's convoluted arguments to the contrary serve only to confuse, not persuade the Court otherwise.

### a. *Noerr–Pennington*

■ Salomon invokes the *Noerr–Pennington* doctrine in an effort to eliminate that part of the counterclaim which asserts that Salomon initiated this action in a bad-faith attempt to "unfairly limit and restrict competition for alpine ski boots in the United States." Counterclaim at ¶¶ 41 and 37–45.

Under *Noerr–Pennington,* bona fide attempts to obtain or influence legislative, executive, judicial, or administrative action are immune from antitrust liability. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Manego v. Orleans Bd. of Trade,* 598 F.Supp. 231, 236 (D.Mass.1984), *aff'd,* 773 F.2d 1, 7 (1st Cir. 1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). Salomon argues that it is immunized from the counterclaim based on initiation and maintenance of this action because it has done nothing more than petition the courts for relief, an act protected under *Noerr–Pennington.* The Court cannot agree.

As an initial matter, it is not settled that the *Noerr–Pennington* doctrine provides immunity from unfair competition claims. The *Noerr–Pennington* trilogy—*Noerr Motor Freight, Pennington,* and *California Motor Transport*—apply the doctrine only in the context of antitrust claims asserted under authority of the Sherman Act, 15 U.S.C. § 1, *et seq.* Alpina does not invoke the Sherman Act, but instead predicates its claim on a common-law unfair competition theory.

Some courts have applied *Noerr–Pennington* to dismiss common-law claims related to unfair competition. *See, Surgidev Corp. v. Eye Technology, Inc.,* 625 F.Supp. 800, 803 (D.Minn.1986) ("the act of filing suit is generally privileged from tort or

antitrust liability"). *See also G. Fruge Junk Co. v. City of Oakland*, 637 F.Supp. 422, 425 (N.D.Cal.1986); *Wilmorite, Inc. v. Eagan Real Estate, Inc.*, 454 F.Supp. 1124 (N.D.N.Y.1977), *aff'd*, 578 F.2d 1372 (2d Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978). But none of those courts grappled with the issue; each assumed that *Noerr–Pennington* applied to common-law claims as well as statutory antitrust claims.

This Court prefers the course taken in *Ball Corp. v. Xidex Corp.*, 705 F.Supp. 1470 (D.Colo.1988). In that case, Ball Corporation alleged that Xidex had perpetrated a fraud on the United States Patent and Trademark Office (PTO) by misrepresenting and manipulating evidence presented at a hearing. After the PTO rejected Ball's patent infringement claim, Ball filed an action in federal court asserting six state-law claims for relief.[2] In defense, Xidex contended that the challenged conduct was part of "a genuine effort to petition the government," *id.* at 1471, subject to *Noerr–Pennington* protection. The court refrained from concluding that *Noerr–Pennington* immunity applied to common-law unfair competition torts.

As a preliminary matter, defendants contend that the *Noerr–Pennington* doctrine of immunity from antitrust liability under the Sherman Act extends to common law tort actions for unfair competition. The *Noerr–Pennington* doctrine holds that genuine attempts to influence the government are protected from Sherman Act liability by the overriding protections of the First Amendment. *California Motor Transport, [supra]*. Defendants urge this court to adopt the holding of *Sierra Club v. Butz*, 349 F.Supp. 934, 936–37 (N.D.Cal.1972). That court found that the combined effect of Supreme Court law on the First Amendment, defamation and the Sher-

man Act immunizes parties who conspire to influence government to competitively injure others. We note that other courts confronting distinguishable allegations of fraudulent statements to the PTO have applied the doctrine to Sherman Act claims while refraining from applying it to common law unfair competition claims. *See, e.g., T.N. Dickinson v. LL Corp.*, 227 U.S.P.Q. 145, 149 (D.Conn. 1985) [1985 WL 14175]. We also note that First Amendment law does not absolutely protect false statements like those alleged in this complaint. *See, e.g., McDonald v. Smith*, 472 U.S. 479, 484, 105 S.Ct. 2787, 2790, 86 L.Ed.2d 384 (1985). The parties have not adequately briefed the issue of whether the chilling effect attributable to common law unfair competition torts invokes the same policy concerns as does the potential for substantial liability under the Sherman Act. Accordingly, we refrain from holding that the *Noerr–Pennington* doctrine should be extended to the claims brought in this litigation.

*Id.* at 1472.

Instead, the Court found that even if *Noerr–Pennington* did apply, plaintiff alleged facts that would bring defendants' conduct within the "sham" litigation exception to that doctrine.[3] In *Ball Corp.*, the court concluded that sufficient evidence of a sham had been presented to overcome the defendant's motion for summary judgment. Here, Alpina has similarly presented sufficient allegations to overcome Salomon's motion to dismiss.

Although Salomon has not addressed the issue, the Court notes a legal debate concerning the applicability of the "sham" exception to permit an antitrust action based on the pursuit of a single lawsuit.

In *California Motor Transport, supra*, 404 U.S. at 513, 92 S.Ct. at 613, the Su-

---

**2.** Those claims were for (1) unfair competition, (2) fraud, (3) product disparagement, (4) intentional interference with protected property interests, (5) intentional interference with prospective business relationships, and (6) patent libel. *Id.* at 1471.

**3.** That exception excludes from *Noerr–Pennington* protection sham efforts to obtain or influence government actions which are actually attempts to interfere improperly with the business relationship of a competitor. *Noerr, supra*, 365 U.S. at 144, 81 S.Ct. at 533; *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 903 (9th Cir.1983).

preme Court plurality stated, "One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused." However, some members of the Court believe that a single lawsuit can constitute a "sham" excepted from *Noerr–Pennington* immunity. In dissenting from the plurality opinion in *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 662, 97 S.Ct. 2881, 2903, 53 L.Ed.2d 1009 (1977), Justice Stevens made clear his view that "when Mr. Justice Douglas wrote for the Court in [*California Motor*] and described 'a pattern of baseless, repetitive claims,' *id.* [404 U.S.] at 513 [92 S.Ct. at 613], as an illustration of an antitrust violation, he did not thereby circumscribe the category to that one example." In Justice Stevens's view, "a single use of the adjudicatory process" can violate the antitrust laws. That view was shared by Justices Brennan, White, and Marshall. *See also Vendo, supra*, 433 U.S. at 644–45, 97 S.Ct. at 2894.

The lower courts are in similar disagreement. The court in *Surgidev Corp., supra*, 625 F.Supp. at 804, stated that "it is extremely doubtful that the initiation of a single lawsuit can fit within the 'sham exception'", while in *Village of Bolingbrook v. Citizens Utilities Company of Ill.*, 864 F.2d 481, 483 (7th Cir.1988), it was noted that "many courts, including this one have recognized that a single suit may be a 'sham'."

At this point in the course of this litigation, and without better briefing from the parties, the Court is unwilling to dismiss the counterclaim on *Noerr–Pennington* grounds. An initial review of relevant authorities suggests that a single legal action brought in bad faith can take this claim outside the scope of the *Noerr–Pennington* doctrine. Salomon's motion is therefore denied.

### c. Specificity

■ Salomon also argues that the unfair competition claim must be dismissed be-

cause defendants have failed to allege with specificity that Salomon's activities have been anything other than bona fide attempts to secure relief. At least one court has held parties to a high standard of pleading when asserting that a lawsuit is a sham. *Association of Data Processing Services v. Citibank*, 508 F.Supp. 91 (S.D. N.Y.1980). But in that case, the sham contention was based on a generalized allegation that the lawsuit was "part of a larger, overall conspiratorial scheme." *Id.* at 93. The facts of that case suggested nothing improper. *Id.* at 93 n. 1.

In this case, Alpina contends that Salomon has accumulated a "vast number of patents," many of which were acquired "for the sole purpose of creating a vast patent portfolio to enforce against competitors and to limit competition." Defendants' Memorandum in Support of Objection to Plaintiffs' Motion to Strike or Dismiss Defendants' Counterclaim for Unfair Competition and in Support of Defendants' Motion for Leave to File Counterclaim, at 2. Especially pertinent here is Alpina's contention that

Salomon uses its patent position and its substantial economic size as a weapon to force third-parties to assign their patent rights to Salomon....

Prior to the initiation of this action, Salomon threatened Alpina with patent infringement and proposed to resolve the dispute on terms that would have required Alpina to limit the quantity of sales of its alpine ski boot products. This anticompetitive proposal was not accepted by Alpina, and, on May 25, 1988, Salomon filed suit for patent infringement against Alpina. The original Salomon complaint identified eight Salomon patents.

Salomon filed this action in bad faith and without actual knowledge as to whether Alpina was, in fact, infringing all of the Salomon patents.

*Id.* at 3 (citing Counterclaim ¶¶ 37 and 38). The Court finds that these allegations satisfy the standard of specificity necessary to sustain, at this initial stage, Alpina's claim that Salomon's action was a "sham".

### d. Paragraphs 34–45 of the Counterclaim

Salomon asks the Court to strike paragraphs 34–45 of the counterclaim (and the counterclaim as a whole) on the basis that none of these paragraphs individually state a claim for relief and that many of these paragraphs contain immaterial and impertinent matters inadmissible under Rule 12(f), Fed.R.Civ.P.

■ Rule 12(f) permits the Court to strike allegations that are redundant, immaterial, impertinent, or scandalous. Generally, unless matters are prejudicial as well as redundant, immaterial, impertinent, or scandalous, a motion to strike such allegations will not be granted. *Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29, 35 (N.D.Ill.1980). And such motions are "narrow in scope, disfavored in practice, and not readily calculated to invoke the court's discretion." *Boreri v. Fiat S.P.A.*, 763 F.2d 17, 23 (1st Cir.1985). *See also* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.21[2] (1989) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation.")

■ Salomon's scattershot attack on Alpina's counterclaim misses the mark. Dissecting each paragraph, challenging each for failing, by itself, to state a claim, and mounting conclusory attacks based on the asserted inaccuracy, redundancy, insufficiency, and immateriality of the counterclaim is not legally persuasive. At this stage of the litigation, the Court cannot conclude that any of the allegations contained in paragraphs 34–45 have no bearing on the case. In deciding a motion to dismiss, allegations are taken as true; thus, Salomon's assertions that "Defendants' charges are blatantly untrue," Memorandum in Support of Plaintiffs' Motion to Strike Defendants' Counterclaim, at 26, are unavailing. Salomon's motion is therefore denied.

### 3. The Sufficiency of Defendants' Objection

Salomon has presented defendants with a huge number of "requests for admissions" which seek defendants' stipulation on a variety of facts related to the patent infringement claims that form the central part of this litigation. The requests came in two waves. The first set was served on August 22, 1989. It consisted of 330 pages. Defendants served their responses five weeks later. The second set was served on November 8, 1989. The following month, defendants filed an objection to the entire second set. Pursuant to Rule 36, Fed.R. Civ.P., plaintiffs move to determine the sufficiency of that objection.[4]

Large numbers of requests are sometimes permitted in especially complex cases. *See, e.g., Photon, Inc. v. Harris Intertype, Inc.*, 28 F.R.D. 327 (D.Mass. 1961) (court permits requests covering 114 legal-size pages and calling for 704 separate answers); *Moscowitz v. Baird*, 10 F.R.D. 233 (S.D.N.Y.1950) (court denies motion to strike request containing 267 items). But the Court is unaware of any case in which the number of requests permitted comes even close to the number of requests propounded by Salomon here. *Cf. Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198 (6th Cir.1986) (plaintiff abused discovery process by submitting over 2,000 requests for admissions; district court properly construed requests as interrogatories and properly limited those to 30). The Court can only marvel at Salomon's ingenuity in drafting its first set of materials comprising, by the Court's count, 1,515 requests for admissions. It is even more amazing that Salomon was able to draft an additional 1,195 requests to submit in their second set.

The Court finds that it cannot fairly evaluate the necessity for the second set of requests or the sufficiency of defendants' objection thereto based on the documents as filed. Accordingly, these issues are

---

**4.** Rule 36, Fed.R.Civ.P., authorizes the service of requests for admissions. The terms of the rule place no limitation on the number and detail of requests to admit, and also provides that "[t]he party who has requested the admissions may move to determine the sufficiency of the answers or objections."

herewith referred to the Magistrate, who is directed to conduct a hearing and prepare a Report and Recommendation as to the appropriate disposition of these issues. *See Misco, supra,* 784 F.2d at 205 (district court adopts magistrate's recommendation and report limiting requests for admissions).

### 4. Conclusion

Accordingly, for the reasons stated hereinabove, the Court rules as follows:

1. Defendants' motion for leave to file a counterclaim for unfair competition (document no. 121) is granted;

2. Plaintiffs' motion to strike and dismiss that counterclaim (document no. 112) is denied;

3. Plaintiffs' motion to determine the sufficiency of defendants' objection to the second set of requests for admissions (document no. 119) is referred to the Magistrate; and

4. Plaintiffs' motion for leave to file a reply to defendants' objection to plaintiffs' second set of requests for admissions (document nos. 124 and 127) is denied.

SO ORDERED.