Hayden v. Grayson                    CV-93-112-JD  03/13/97

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Jessica L.  Hayden, et al.

      v.                          Civil No. 93-112-JD

Richard Grayson


                    O R D E R


     The plaintiffs, Jessica L. Hayden, Nicole C. Merrill, and

Colleen M. Rhoads, brought this action under 42 U.S.C. § 1983

against the defendant, Richard Grayson, the former police chief

of Lisbon, New Hampshire.  The plaintiffs allege that the

defendant violated their right to equal protection by failing to

investigate and arrest their sexually abusive father, Hervey

Gagnon.  Before the court is the defendant's motion for summary

judgment (document no. 41).


                    Background[1]

     In 1983, the plaintiffs notified their mother, Sylvia Kinne,

that Gagnon had sexually abused them on numerous occasions.[2]  In

response, Kinne excluded Gagnon from the family home and

_____

   The facts relevant to the instant motion are either not in
dispute or have been alleged by the plaintiff.

   Gagnon is the stepfather and adoptive father of plaintiffs
Hayden and Rhoads and the natural father of plaintiff Merrill.

subsequently divorced him. The plaintiffs then reported the abuse to the defendant, who later informed the plaintiffs that he refused to arrest Gagnon because the county attorney would not prosecute the case. In fact, the defendant had not spoken with the county attorney about the case.

In 1990, after receiving information that the defendant had failed to pursue other claims of domestic sexual abuse, the plaintiffs contacted the county attorney directly. At that time, the county attorney prosecuted Gagnon, who entered a plea bargain and was sentenced.

The plaintiffs do not allege that Gagnon sexually abused them after their initial complaint to the defendant in 1983, but instead assert that Gagnon continued to live in Lisbon and "between 1983 and 1990, harassed the Plaintiffs, causing them fear, embarrassment, and mental anguish." Amended Complaint at ¶ 17. They further claim that because of the defendant's actions "Plaintiffs have suffered and continue to suffer permanent grave emotional and psychological injuries requiring the expenditure of large sums of money for care and treatment." Id. at ¶ 31.

Subsequently, the plaintiffs brought this action alleging, inter alia, that the defendant violated their federal right to equal protection by failing to pursue their original complaint

2

against Gagnon.[3]  The defendant has moved for summary judgment on the plaintiffs' federal equal protection claim, asserting that the plaintiffs have failed to establish the necessary elements of such a claim.

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)).  The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v.

---

   The plaintiffs also charge the defendant with (1) violation of their right to equal protection under the New Hampshire Constitution, (2) negligence, and (3) intentional infliction of emotional distress.

<u>Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992).  The court must view the entire record in the light most favorable to the plaintiffs, "'indulging all reasonable inferences in [their] favor.'"  <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)).  However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiffs "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

In <u>DeShaney v. Winnebago County</u>, the United States Supreme Court noted that "[t]he State may not . . . selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."  489 U.S. 189, 197 n.3 (1989).  In <u>Soto v. Flores</u>, 103 F.3d 1056 (1st Cir. 1997), the First Circuit addressed the issue of the standard of proof necessary to establish an equal protection violation based on a law enforcement officer's failure to provide as much protection to victims of a certain class of crime as provided to the victims of other similar crimes.  In <u>Soto</u>, the court ruled that plaintiffs alleging failure by a law enforcement officer to protect victims of domestic violence who are

4

seeking to defeat a motion for summary judgment must:

> proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, that discrimination against women was a motivating factor, and that the plaintiff was injured by the policy or custom.

Id. at 1066 (quoting Ricketts v. City of Columbia, 36 F.3d 775, 779 (8th Cir. 1994), itself citing Watson v. City of Kansas City, 857 F.2d 690 (10th Cir. 1988)). Although Soto deals explicitly with cases involving victims of domestic violence, the court proceeds under the assumption that these requirements also apply in cases such as this one involving domestic child sexual abuse. See id. at 1065-66. To satisfy this standard, the plaintiffs "must show that there is a policy or custom of providing less protection to victims of [domestic child sexual abuse] than to victims of other crimes, that . . . discrimination [against those victims] is a motivating factor, and that [the plaintiffs were] injured by the practice." Id. at 1066.

As a preliminary matter, the court notes that this case differs from Soto in significant ways. In Soto, the plaintiff asserted that the class of domestic violence victims was substantially comprised of women, so the challenged policy had the effect of discriminating against women. See id. at 1067.

5

Here, however, the plaintiffs have failed to settle on exactly what group the defendant was discriminating against.  The plaintiffs have asserted that the defendant discriminated against them "because the Plaintiffs were female and/or victims of domestic sexual abuse and/or child victims of sexual or domestic sexual abuse."  Amended Complaint at ¶ 29.[4]  Such a scattershot approach to litigation does not advance the plaintiffs' case and is not viewed favorably by the court.  See Alpha Lyracom Space Communications, Inc. v. Communications Satellite Corp., 946 F.2d 168, 175 (2d Cir. 1991); Salomon S.A. v. Alpina Sports Corp., 737 F. Supp. 720, 726 (D.N.H. 1990); see also Gold v. Wolpert, 876 F.2d 1327, 1333 (7th Cir. 1989) (sanctioning counsel's scattershot approach on appeal); Max M. v. New Trier High Sch. Dist. No. 203, 859 F.2d 1297, 1300 (7th Cir. 1988) (observing scattershot approach taken on appeal was "antithesis of sound advocacy").  Indeed, the plaintiffs' approach has the effect of undermining their claim of invidious discrimination.  By asserting seven alternative classes against one or more of which

_____

   The court notes that the plaintiffs' disjunctive enumeration encompasses at least seven possible categories: (1) females; (2) victims of domestic sexual abuse; (3) child victims of sexual abuse; (4) child victims of domestic sexual abuse; (5) female victims of domestic sexual abuse; (6) female child victims of sexual abuse; or (7) female child victims of domestic sexual abuse.

they claim the defendant may have had a custom or policy of discriminating, they present themselves as not knowing which class the defendant was actually discriminating against and undercut the force of their assertion that the defendant had a policy of invidiously discriminating against any particular named class. In spite of the plaintiffs' lack of focus, the court will, as it is obliged to do, take the plaintiffs' proffered evidence in the light most favorable to them. In doing so, the court finds that the plaintiffs have stated the strongest case for the existence of a policy or custom which has the effect of invidiously discriminating against child victims of domestic sexual abuse.[5]

As noted above, to succeed in their equal protection claim, the plaintiffs must show, _inter alia_, that invidious discrimination against child victims of domestic sexual abuse was a motivating factor for the defendant's alleged custom or policy of providing less protection to those victims than to the victims of

---

The court reaches this conclusion because, while the plaintiffs have produced some evidence to suggest that the defendant treated crimes involving domestic sexual abuse differently than other sorts of crimes and that he treated crimes involving child victims differently than crimes involving adult victims, they have not produced evidence demonstrating that the defendant treated crimes involving female victims differently than crimes involving male victims. See _infra_ note 9.

7

other similar crimes.[6]  In other words, the plaintiffs must prove that the defendant failed to pursue their complaint at least in part "because of," rather than merely "in spite of" the adverse effect that his actions would have on them as members of a disfavored group.  See Personnel Administrator v. Feeney, 442 U.S. 256, 274 (1979); Soto, 103 F.3d at 1067.  The burden of proving such invidious discrimination can be onerous, for as the First Circuit has noted, "[w]ithout the smoking gun of an overtly discriminatory statement by a decisionmaker, it may be very difficult to offer sufficient proof of such a purpose."  Id. at 1067-68.  Because the plaintiffs in this case have not provided any "smoking gun" evidence of discrimination, the court notes that they must confront and surmount this difficult obstacle in order to withstand the grant of summary judgment.[7]

---

The court assumes for the purposes of this motion that the plaintiffs have produced enough evidence to raise a reasonable inference that the defendant had a custom of providing less protection to the child victims of domestic sexual abuse than to the victims of other similar crimes.

Another factor that makes it more difficult for the plaintiffs here to withstand summary judgment than was the case in Soto is that in Soto the plaintiff could rely on Puerto Rico's Law 54, a comprehensive effort to curb and criminalize domestic violence, in an effort to meet her burden of proof.  Law 54 contained specific findings that domestic violence disproportionately affects women and imposed extensive reporting and arrest requirements on police officers.  See 103 F.3d at 1060, 1068.  In that case, the legislative findings and intent of Law 54 formed a basis from which to conclude that failure by police officers to comply with the requirements of Law 54 was motivated by an intent

(continued...)

In an effort to prove that the defendant in this case was motivated by an intent to discriminate against a group of which they were members, the plaintiffs have provided two forms of evidence: (1) anecdotal information about the defendant's alleged failure to pursue claims against the perpetrators of various crimes, and (2) testimony from police department employees purporting to show that the defendant had a negative attitude toward cases involving domestic child sexual abuse and treated them differently than other cases.[8]  The court discusses this

(...continued)
to discriminate against women.  See id. at 1069.  Even with Law 54, the plaintiff in Soto failed to meet her burden of proof on the issue of discriminatory intent.  See id.
at 1072.  The court notes that New Hampshire has no comparable statutory provision on which the plaintiffs in this case can rely.

   The plaintiffs have produced additional evidence which, if anything, tends to undermine rather than support their claim by suggesting motives for the defendant's alleged custom that are not based on a desire to discriminate against members of a disfavored minority.  For example, the plaintiffs have produced anecdotal evidence of crimes that the defendant pursued or failed to pursue depending on whether he held a personal animus toward the perpetrator.  The plaintiffs suggest that the defendant did not pursue their claims against Gagnon because he had developed a favorable attitude toward Gagnon and was attempting to protect Gagnon from prosecution.  As evidence of this, the plaintiffs have produced a statement by Linda Dunn, a Lisbon police officer, that "[a]ll investigations eventually went around Chief Grayson because we officers knew that he (Grayson) generally would not follow through, or allow us to, unless he had a personal interest or vendetta against a particular individual."  Plaintiffs' Opposition, Ex. 2 at 1.  This claim tends to undermine the plaintiffs' competing theory that the motivation for the defendant's actions was an intent to discriminate against the
(continued...)

9

evidence <u>seriatim</u>.

First, the plaintiffs have provided anecdotal evidence of two crimes involving domestic child sexual abuse, in addition to their own report of abuse by Gagnon, that they allege the defendant did not pursue.[9] They have also provided anecdotal evidence of the defendant's failure to pursue one crime involving non-domestic child sexual assault and two crimes not involving sexual abuse or assault.[10] The defendant, in support of his motion for summary judgment, has offered evidence of ten crimes

_____

(...continued)
plaintiffs because they were members of a disfavored minority.

In 1990, a complaint was made about a grandfather sexually molesting his twelve-year-old grandson. According to the plaintiffs, "[a]n interview with the child was taped and later the tape disappeared while in the custody of Lisbon Police Department . . . . It is believed that Chief Grayson gave the tape to the accused." Plaintiffs' Objection, Ex. 2 at ¶ 2. On another occasion, the defendant allegedly failed to follow through on or allow other officers to follow through on a report of sexual abuse of a two-and-a-half-year-old child.

The plaintiffs allege that the defendant blocked investigation of a complaint involving a gang rape of a thirteen-year-old girl. The two incidents involving other crimes are as follows: (1) the defendant allegedly released, without administering a breathalyzer test, a driver brought in after failing a field sobriety test; and (2) the defendant failed to follow through on or allow other officers to follow through on a report that a group of teenagers, some of whom were specifically identified in the report, burglarized and vandalized a home.

involving males who sexually assaulted female minors in which he helped investigate, arrest, or prosecute the perpetrator.[11]

The unfocused and inconsistent nature of the plaintiffs' proffered anecdotal recitations does not advance their case because a few episodes of failure to pursue crimes, in isolation, do not give rise to any reasonable inference as to why the crimes were not pursued. The plaintiffs themselves have suggested several possible motives for the defendant's behavior. However, their proof on this point does not provide any rational basis on which a fact finder could reasonably choose between those motives. Thus, the plaintiffs' anecdotal evidence is ineffective to raise a genuine issue of material fact tending to show that a motivating factor behind the defendant's failure to pursue the crimes was an intent to discriminate invidiously against the

---

The probative value of the defendant's proffered evidence is limited by the amoebic nature of the plaintiffs' claim. Only two of the ten cases relied on by the defendant involve child victims of domestic sexual abuse. The eight remaining cases appear, in the light most favorable to the plaintiffs, to involve child victims of non-domestic sexual abuse or assault. Despite the fact that little of the defendant's evidence addresses directly the category for which the plaintiffs have made the strongest showing, in the summary judgment framework, his proffered evidence coupled with his assertion (of otherwise limited value because of its self-serving character) that he has "never refused to prosecute a male for sexual assault because his victim was a female minor," satisfies his burden of demonstrating the lack of a genuine issue of material fact on the issue of his alleged discriminatory animus and shifts the burden to the plaintiffs to show that a genuine material factual dispute remains for trial.

11

child victims of domestic sexual abuse.

The plaintiffs' evidence concerning the defendant's negative attitude toward cases involving domestic child sexual abuse comes in two forms: (1) evidence that the defendant's approach to their case was "typical of old time police work," Plaintiffs' Objection, Ex. 1 at ¶ 11, indicating an attitude that "interfamily sex abuse is something that is sometimes better left to the family and [is] not always appropriately handled by the criminal justice system," id., Ex. 1 at ¶ 12, and (2) evidence that the defendant kept the files for this and other cases involving domestic child sexual abuse in a safe, located separate from other files, to which only he had access. The plaintiffs' evidence concerning the defendant's negative attitude toward cases involving domestic child sexual abuse also fails to raise a reasonable inference that the defendant's custom of providing less protection to members of a disfavored minority was motivated by a desire to discriminate against members of that group.

First, the plaintiffs' "proof" of the defendant's purported "old time" attitude is wholly insufficient to raise a genuine issue of material fact on the issue of the defendant's alleged discriminatory motive. Donna Ransmeier, who has known the defendant only since 1986 (some three years after the plaintiffs' initial complaint) asserts:

12

> Based on [her] exposure to the general police community, [she] was aware of the attitude among older police officers in handling domestic violence and not prosecuting these cases. For example, as a friend of retired Littleton Police Chief Stan MacIntyre, he expressed the belief that interfamily sex abuse is something that is sometimes better left to the family and was not always appropriately handled by the criminal justice system. [Her] impression is that [the defendant] may have had the same attitude in his approach to the Gagnon case the first time that it surfaced.

Plaintiffs' Opposition, Ex. 1 at ¶ 12.[12] This purely speculative assertion simply does not provide a sufficient basis for a fact finder reasonably to infer that the defendant's presumed custom of providing less protection to the child victims of domestic sexual abuse than to the victims of other similar crimes was motivated by the defendant's desire to provide less protection to those victims or any other group to which the plaintiffs might belong. Even in the light most favorable to the plaintiffs, the defendant's purported "old time" attitude at most tends to show that the defendant had a custom of providing less protection to some child victims of domestic sexual abuse based on the desire of the non-abusive parent. While the Soto court noted that old-fashioned attitudes or "archaic stereotypes" sometimes betoken

---

The court assumes without deciding that this evidence meets the admissibility requirements of Fed. R. Civ. P. 56(e).

13

unlawful discrimination based on factors such as gender, the court is not aware of any historical basis for a bias against child victims of domestic sexual abuse that would allow a fact finder reasonably to conclude that a policy of providing a disparate level of protection alone warrants an inference that the policy was motivated by a desire to discriminate invidiously. See 103 F.3d at 1070. As other courts have noted, there are rational non-discriminatory reasons to treat certain types of crime differently than others. See Eagleston v. Guido, 41 F.3d 865, 878 (2d Cir. 1994)("Nothing in the Constitution requires that arrest policies be uniformly applied in all situations. 'Because of the inherent differences between domestic disputes and non-domestic disputes, legitimately different factors may affect a police officer's decision to arrest or not to arrest in any given situation.'")(quoting Ricketts v. City of Columbia, 36 F.3d 775, 781-82 (8th Cir. 1994)). An "old time" attitude alone is insufficient -- to be actionable it must be supported by some competent evidence that the attitude is motivated by an intent to discriminate invidiously against an identifiable minority.

Second, the defendant's storage, in a separate location from "all other files including juvenile," Plaintiff's Opposition, Ex. 2 at 2, of the files for this and other cases he failed to pursue might at best tend to show the existence of a custom of treating

14

cases involving child domestic sexual assault differently than other cases. However, such a practice does not give rise to a reasonable inference that the defendant treated those cases differently because of an intent to discriminate invidiously against members of an identifiable minority. No reasonable fact finder could conclude, based on this paucity of evidence, that the reason for the defendant's behavior was an intent to discriminate against the plaintiffs.

In summary, the plaintiffs' evidence, even taken in the light most favorable to them, is simply too insubstantial to form a basis for any reasonable inference which would support their contention that the defendant provided less protection to them because of his desire to discriminate invidiously against members of an identifiable minority. Thus, the court finds that the plaintiffs have failed to meet their burden of demonstrating the existence of a genuine issue of material fact to support their claim that the defendant acted with an invidiously discriminatory motive.[13]

---

Because of the court's decision, it need not consider the issue of whether the plaintiffs have provided sufficient evidence to raise a reasonable inference that the defendant's policy caused them a legally cognizable harm.

## Conclusion

For the reasons stated above, the defendant's motion for summary judgment (document no. 41) is granted as to the plaintiffs' federal equal protection claim. The court declines to exercise jurisdiction over the plaintiffs' claims arising under New Hampshire law. The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 13, 1997

cc: Edward M. Van Dorn Jr., Esquire
Michael Lenehan, Esquire

16